## The People *vs.* Crissie & Harvey.

In an indictment for obtaining the signature of a person to a written instrument by false pretences, it need only appear that the instrument, on its face, is one calculated to prejudice the party who has signed it, though on the facts stated in the indictment it would be void for fraud.

An indictment alleging that the defendants falsely pretended to a third person that a drove of sheep, which they offered to sell him, were free from disease and foot ail, and that a certain lameness, apparent in some of them, was owing to an accidental injury, by means of which they obtained a certain sum of money on the sale of said sheep to such person, with proper qualifying words, and an averment negativing the facts represented, is good under the statute against cheating by false pretences.

ERROR to the Tioga oyer and terminer. The defendants were indicted in that court for cheating by false pretences. The first count alleged that the defendants intending unlawfully to

cheat and defraud one John Brock, on, &c. at, &c. with force and arms did designedly, and with intent to cheat and defraud said Brock, then and there unlawfully, knowingly and designedly, falsely pretend to said Brock of and concerning a certain drove of seven hundred and eighty-six sheep, then and there offered for sale by the defendants to Brock, that there was no disease or foot ail among said sheep, and that á certain lameness, with which certain of the sheep then and there appeared to be affected, was occasioned by teams driving through the said drove and treading upon and mashing the feet of such lame sheep, and that there was no other cause for such lameness than the one mentioned ; that Brock, believing the said pretence and representation, and being deceived thereby, was induced by reason thereof, on the defendants' making a fraudulent sale and delivery of said drove of sheep to him, said Brock, as and for a drove of sheep among which there was no disease or foot ail, to pay the defendants $2112,38, and that the said defendants did then and there receive and obtain said money of said Brock, by means of the false pretence aforesaid, with intent to cheat and defraud said Brock ; whereas, &c. (negativing the pretences and averring that divers of the sheep, &c. had the foot ail.) And whereas in fact the defendants well knew the pretence aforesaid made by them to be false. The second count was like the first, except that it charged that the defendants obtained Brock's signature to a promissory note upon like pretences with those charged in the first count.

The defendants demurred to the indictment, and the court of oyer and terminer gave judgment in their favor. The people brought error.

*G. S. Camp*, (district attorney,) for the plaintiffs in error.

*A. Schuyler*, for the defendants in error, insisted that the offence charged was not indictable at common law; and that it did not come within the statute, 2 *R. S.* 677, § 53. Common prudence would be a sufficient safeguard against such a representation as that set forth in the indictment. (2 *Russ. on Cr,*

289 ; *The People* v. *Haynes*, 11 *Wend.* 557 ; *The People* v. *Herrick*, 13 *id.* 87 ; *The People* v. *Williams*, 4 *Hill*, 9.) Again, it is not shown that the prosecutor was injured. It is not averred that the sheep are of less value than they would have been if the representation had been true. (*The People* v. *Gates*, 13 *Wend.* 311 ; *The People* v. *Thomas*, 3 *Hill*, 169.)

JEWETT, J. The statute declares that "Every person, who, with intent to cheat or defraud another, shall designedly, by color of any false token or writing, *or by any other false pretence*, obtain the signature of any person to any written instrument, or obtain from any person any money, personal property or valuable thing, upon conviction thereof shall be punished," &c. (2 *R. S.* 677, § 53.) The question in this case is, whether the indictment sets forth a false pretence, indictable under the statute. To constitute the offence several things must concur. There must be an intent to cheat or defraud some person ; for that purpose some false pretence must be designedly used, and the fraud must be accomplished by means of the false pretence; or if not wholly by that means, it must have had so material an effect upon the mind of the party defrauded, that without it he would not have parted with the money or property, or would not have signed the written instrument, his signature to which is alleged to have been fraudulently obtained.

This indictment, I think, contains all the necessary charges to constitute the offence. It is supposed to be defective in the not averring that Brock suffered damages on account of the false pretence, and also because, as alleged, the particular pretence is not one calculated to deceive a person of common prudence. This court has often held that where the charge is the obtaining a signature to a written instrument, it is unnecessary to allege that the party whose signature had been obtained was damnified by it; and that the offence is complete when a party has been induced, by a pretence within the statute, to affix his signature to an instrument which, if duly executed without fraud, would have worked a pecuniary prejudice to him. If the instrument be not void on its face, so as to be entirely

worthless, it is enough. (*The People* v. *Stone*, 9 *Wend.* 182; *The Same* v. *Genung*, 11 *id.* 18; *The Same* v. *Gates*, 13 *id.* 320; *The Same* v. *Galloway*, 17 *id.* 540.) There is nothing to show but that the note which Brock is said to have been cheated into signing, in this case, was a valid promissory note, independent of the defendants' fraud in procuring it to be signed. In *The People* v. *Thomas*, (3 *Hill*, 169,) the indictment charged that the defendant falsely represented to one Jones, against whom he held a promissory note, that the note had been lost or burned up, whereby Jones was induced to pay it. The facts were proved as alleged, and also that the defendant afterwards negotiated the note to another person, for value, without apprizing him that it had been paid. This court held the indictment bad, and the conviction of the defendant upon it wrong, on the ground that Jones had not been cheated out of any thing, as he had only been induced to pay a debt which he owed. The subsequent fraud of passing off the note as unpaid was not charged; but if it had been, the court said it would be difficult to see that Jones had been injured by it. In *The People* v. *Williams*, (4 *Hill*, 9,) the pretence upon which the defendant was convicted was made by him to one Van Guilder, by which he induced the latter to sign a deed of lands. The representation was that a third person who held a bond and mortgage against Van G. was about to sue him on the bond and foreclose the mortgage, and had so told the defendant. It was held not to be within the statute, because, as it was said, it was not calculated to deceive persons of ordinary prudence and caution; and the court said, if the indictment could be sustained, every false pretence, however absurd or irrational on the face of it, would be the subject of indictment. *Goodhall's case*, (*Ry. & Mood. Cr. Cas.* 461, *and Roscoe's Cr. Ev.* 362,) was referred to as sustaining the position. It is clear that a pretence to be within the statute must be of an alleged *existing fact* as distinguished from a *promise*. The latter, however fraudulent, will not sustain an indictment under the statute. Such was *Woodhull's case*, to which the court referred. The prisoner induced a butcher to send meat to his house by prom-

The People v. Crissie.

ising to send the money back by the bearer. It was proved to be a fraudulent contrivance, and that the defendant intended to and did get the meat without sending the money. The defendant was convicted; but on a case reserved for the opinion of the judges, the conviction was held wrong, on the principle to which I have referred.

Though the language of the statute—"by any other false pretence" is exceedingly broad, and in its general acceptation would include every kind of false pretence, and though it may be difficult to draw a line which would exclude cases where common prudence would be a sufficient protection, still I do not think it should be so interpreted as to include cases where the representation was absurd or irrational, or where the party alleged to be defrauded had the means of detection at hand. The object of the statute, it is true, was to protect the weak and credulous against the wiles and stratagems of the artful and cunning. But this may be accomplished under an interpretation which should require the representation to be an artfully contrived story, which would naturally have an effect upon the mind of the person addressed—one which would be equal to a false token or false writing—an ingenious contrivance or unusual artifice, against which common sagacity and the exercise of ordinary caution would not be a sufficient guard.

In *The Queen* v. *Kenrick*, (5 *Adolph. & Ellis, N. S.* 49,) one count of the indictment charged that the defendant, unlawfully, &c. did falsely pretend to one G. W. F. that a certain carriage called a phæton, and a certain mare and a certain gelding, which the said defendant then and there offered for sale to the said G. W. F., had been the property of a lady then deceased, and were then the property of her sister, and were not then the property of any horse-dealer, and were then the property of a private person, and that the said mare and the said gelding, were then respectively quiet to ride and drive, and quiet and tractable in every respect," all of which was negatived with the averment of a *scienter;* the count, without any thing more, concluding to the great damage of the said G. W. F. to the evil example, &c. The defendant was convicted,.

and the court of king's bench, on a motion in arrest of judgment, held the count good. (*See also* Young v. *The King*, 3 *T. R.* 98; *Commonwealth* v. *Drew*, 19 *Pick.* 179.) The case under consideration is at least as strong as that of *The Queen* v. *Kenrick.*

The indictment in question is correct in point of form, and the averments, if true, show a pretence within the statute. The judgment of the court below must be reversed, and judgment be rendered for the people on the demurrer.

BEARDSLEY, J., concurred.

BRONSON, Ch. J.  I dissent entirely from this judgment. The case comes to this, and nothing more: for the purpose of effecting a sale, or obtaining a larger price, the owner knowingly represented his goods to be better than they really were; and the question is, whether this fraud shall be punished criminally under the statute of false pretences. I think not. No case has ever yet gone so far. If such a rule could be enforced, and be administered with reasonable safety to honest men, I should be quite willing to have a law declaring that every false representation made for the purpose of securing a good bargain should be punished as a crime. But I think that is not now the law of the land.

Judgment reversed