LOUIS F. THERASSON, PLAINTIFF IN ERROR, *v.* THE PEOPLE OF THE STATE OF NEW YORK, DEFEND- ANT IN ERROR.

20h 55
f 64ad133

*Obtaining a signature to the satisfaction of a mortgage by false pretences — is an offence within 2 R. S., 677, § 53.*

Upon the trial of the plaintiff in error, it appeared that in 1874, and while he was acting as attorney and confidential adviser of one Mrs. Zabriskie, she, by his advice, loaned $15,000 to a church, taking back a bond therefor, secured by a mortgage on real estate belonging to the church, payable three years from date; that thereafter, and in March, 1875, the said plaintiff in error, feloniously and with intent to cheat and defraud Mrs. Zabriskie, falsely pretended and represented to her that the said mortgage was not a good security for the said loan; that he believed that unless he could procure immediate payment thereof she would incur a loss thereon; that he expected to have great difficulty in inducing immediate payment thereof from the church, but that if Mrs. Zabriskie would execute and deliver a satisfaction piece thereof to him he would use his influence to procure such payment; that, relying upon said representations, Mrs. Zabriskie executed and delivered the satisfaction piece to him; that by means thereof he received the amount due on the mortgage from the church, and converted it to his own use.

The statements made by him were false and untrue, and were known by him to be so, as the agent of the church had applied to him to see if Mrs. Zabriskie would allow the church to pay off the mortgage, as the church had just received some $40,000 in cash, and had determined to use it, where possible, in paying off mortgages whether due or not due.

*Held,* that procuring the signature of a mortgagee to a certificate of satisfaction of the mortgage by means of false pretences, made with intent to cheat and defraud, was within the provisions of 2 Revised Statutes, 677, section 53, and that the plaintiff in error was properly convicted thereunder.

Writ of Error to review the conviction of the plaintiff in error in the Court of Oyer and Terminer of the city and county of New York.

*William A. Beach,* for the plaintiff in error.

*Benjamin K. Phelps,* district-attorney, for the People.

Ingalls, J. :

The plaintiff in error was indicted, tried and convicted for having, by certain false and fraudulent pretences, obtained the signature of Sarah J. Zabriskie to a satisfaction piece, by means of which a mortgage executed to her by the ministers, elders and deacons of the Reformed Low Dutch Church of Harlem, for the sum of $15,000, became discharged. The offence is alleged in the indictment in the following manner, viz. :

" City and County of New York, *ss. :*

" The jurors of the People of the State of New York, in and for the body of the city and county of New York, upon their oath, present : That on the nineteenth day of February, in the year of our Lord one thousand eight hundred and seventy-four, and at all other times hereinafter mentioned, the ministers, elders and deacons of the Reformed Low Dutch Church of Harlem, in the ninth ward of the city of New York, was a religious corporation, duly organized and existing under the laws of the State of New York, and as such corporation was empowered and authorized by such laws to acquire and own in fee and its corporate name, for the proper uses of said corporation, the lands and tenements here-inafter more particularly specified, and in its corporate name to convey the said lands and tenements by indenture of mortgage or otherwise, and that on said day the said corporation was the owner in fee, and was duly seized of certain lands and tenements situate and being in the said city and county of New York, to wit : Two lots of land situate and being on the south-east corner of Third Avenue and One Hundred and Twenty-third street in said city, and that the same was then of great value, to wit, of the value of thirty thousand dollars and more. That on the said nineteenth

FIRST DEPARTMENT, JANUARY TERM, 1880.

day of February in the year aforesaid, the said corporation duly executed and delivered to one Sarah J. Zabriskie, a certain indenture of mortgage, whereby the said corporation conveyed the lands and tenements aforesaid to the said Sarah J. Zabriskie, conditioned upon the payment to said Sarah J. Zabriskie by the said corporation, at the expiration of three years from said date, of the sum of fifteen thousand dollars, named in a certain bond bearing even date with said indenture of mortgage, and on said day executed and delivered by said corporation to said Sarah J. Zabriskie ; the said bond and mortgage being so executed and delivered by said corporation to secure a loan of the sum of fifteen thousand dollars, lawful money of the United States, made to it on said day by the said Sarah J. Zabriskie, which said mortgage was thereupon duly recorded in the office of the register of the city and county of New York, on the twenty-first day of February, in the year of our Lord one thousand eight hundred and seventy-four, at nine o'clock in the morning of said last mentioned day in liber 1167 of mortgages, at page 47 ; the said bond and mortgage were good, valid and existing obligations and securities ; and the said mortgage was a good, valid and existing lien upon the said lands and tenements, on the third day of March in the year of our Lord one thousand eight hundred and seventy-five.

"And the jurors aforesaid, upon their oath aforesaid, do further present : That Lewis F. Therasson, late of the first ward of the city of New York, in the county of New York, aforesaid, on the said 19th day of February, in the year of our Lord 1874, was then and there an attorney-at-law, and as such, was then and there the attorney and agent for the said Sarah J. Zabriskie in the matter of said loan to the said corporation, and on said day, and during all the times mentioned in this inquisition, such relation was maintained and existed between said Lewis F. Therasson and said Sarah J. Zabriskie as to her loans on real estate security."

And the jurors aforesaid, upon their oath aforesaid, do further present :

" That the said Louis F. Therasson, late of the first ward of the city of New York in the county of New York aforesaid, on the third day of March, in the year of our Lord one thousand eight hundred and seventy-five, and at the ward, city

and county aforesaid, with force and arms on the day and year aforesaid, with the intent to feloniously cheat and defraud the said Sarah J. Zabriskie, did then and there feloniously, unlawfully, knowingly and designedly, falsely pretend and represent to the said Sarah J. Zabriskie that the said mortgage was not a good security for the payment to her of the said sum of fifteen thousand dollars; that she (the said Sarah J. Zabriskie thereby meaning), had made a bad investment in loaning said sum of money on such security that he (the said Louis F. Therasson thereby meaning), was of opinion, and that he believed, that unless he could procure immediate payment of said loan by said corporation, she (the said Sarah J. Zabriskie thereby meaning), would incur a loss, and would fail to realize from said mortgage when due the full amount loaned; that he expected great difficulty in inducing immediate payment thereof by said corporation ; that if she, the said Sarah J. Zabriskie would execute and deliver to him (the said Louis F. Therasson thereby meaning), a certain satisfaction of mortgage, which he, the said Louis F. Therasson, then and there exhibited to her, he would exert his influence to induce the said corporation to repay said loan at once, and that he expected that said corporation would refuse to make such payment until said mortgage became due.

" And the said Sarah J. Zabriskie then and there believing the said false pretences and representations, so made as aforesaid by the said Louis F. Therasson, and being deceived thereby, was then and there induced by reason of the false pretences and representations, so made as aforesaid, to sign, and being so induced as aforesaid, put her signature to a certain written instrument of the kind, commonly called a certificate of satisfaction of mortgage, and which said certificate of satisfaction of mortgage is in the words and figures in substance, and to the effect following, that is to say :

" STATE OF NEW YORK, ⎰
" CITY AND COUNTY OF NEW YORK. ⎱ ss. :

" I, Sarah J. Zabriskie, of the city of New York, do hereby certify that a certain indenture of mortgage, bearing date the 19th day of February, 1874, made and executed by the ministers, elders and deacons of the Reformed Low Dutch Church

of Harlem, in the ninth ward of the city of New York, to me, and recorded in the office of the register of the city and county of New York in liber 1167 of mortgages, page 47, on the 21st day of February, 1874, at 9 o'clock, A. M., is paid, and I do hereby consent that the same be discharged of record.

                    " SARAH J. ZABRISKIE.

" Dated, the 3d day of March, 1875.

    " In presence of

            " L. F. THERASSON."


And the said Sarah J. Zabriskie then and there, being so induced as aforesaid, did deliver the said written instrument, with her signature thereto, to the said Louis F. Therasson, and the said Louis F. Therasson did then and there feloniously and designedly receive and obtain from the said Sarah J. Zabriskie her signature to the aforesaid written instrument by means of the false pretences and representations aforesaid, and with intent feloniously to cheat and defraud the said Sarah J. Zabriskie thereby.

Whereas, in truth and in fact, the said mortgage was a full and sufficient security for the payment of said sum of $15,000; and whereas, in truth and in fact, the said Sarah J. Zabriskie had not made a bad investment in loaning said sum of money on such security ; and whereas, in truth and in fact, the said Louis F. Therasson was not of opinion, nor did he believe, that said Sarah J. Zabriskie would fail to realize the full amount loaned upon said mortgage when due, nor that she would incur a loss, unless he could procure immediate payment of said loan by said corporation ; and whereas, in truth and in fact, he, said Louis F. Therasson, did not expect great difficulty in inducing the said corporation to make immediate payment thereof ; and whereas, in truth and in fact, the said corporation was then and there ready and anxious to make such payment, and it did not need the exertion of any influence by said Louis F. Therasson to induce it to make such payment at once, and he did not then and there expect that said corporation would refuse to make such payment until said mortgage became due ; and whereas, in fact and in truth, the pretences and representations so made as aforesaid, by the said Louis F. Therasson to the said Sarah J. Zabriskie was and were

in all respects false and untrue, to wit : On the day and year last aforesaid, at the ward, city and county aforesaid ; and whereas, in fact and in truth, the said Louis F. Therasson, well knew the said pretences and representations so by him made as aforesaid, to the said Sarah J. Zabriskie to be utterly false and untrue at the time of making the same.

And so the jurors aforesaid, upon their oath aforesaid, do say : "That the said Louis F. Therasson, by means of the false pretences and representations aforesaid, on the day and in the year aforesaid, at the ward, city and county aforesaid, feloniously, unlawfully, falsely, knowingly, fraudulently and designedly did receive and obtain from said Sarah J. Zabriskie her signature to the written instrument aforesaid, with intent feloniously to cheat and defraud her thereby, against the form of the statute in such case made and provided, and against the peace of the people of the State of New York and their dignity."

We perceive that the indictment charges that the pretences and representations were made with the felonious intent on the part of said Therasson to cheat and defraud the said Sarah J. Zabriskie, and that she, believing such pretences and representations to be true, was induced to and did sign the said written instrument. All of which pretences and representations are therein alleged to have been false. The plaintiff in error interposed a demurrer to the indictment, which seems to have been fully argued by counsel, and deliberately considered by the court, as appears by the able opinion submitted by Justice BARRETT* in deciding the case, and to which we refer with confidence, thereby restricting the discussion herein in regard to the validity of the indictment. The

---

* BARRETT, J. : (1 ) There is no doubt that, to constitute a statutory false pretence, the misrepresentation must ordinarily have regard to an existing fact. The difficulty is to draw the line between assertion of fact and expression of opinion. A fact may be stated upon hearsay or as the result of reasoning. It is then in effect but an expression of opinion. Upon the other hand a statement may be made in the form of an opinion which necessarily imports knowledge of a fact. The solution of the present question does not therefore depend upon the mere form of expression, but upon its substance and intent.

To illustrate : It is charged that the corporation was ready and anxious to pay off the mortgage when the defendant made the alleged misrepresentations. Under this indictment it is competent to prove the defendant's knowledge of that fact. If proved, the pretence that he expected a present refusal on the part of

statute which is alleged to have been violated provides : "Every person who, with intent to cheat and defraud another, shall designedly by color of any false token or writing, *or by any other false pretence obtain the signature of any person to any written instrument,* or obtain from any person any money, personal property or valuable thing," etc. We are convinced that procuring, by false pretences made with intent to cheat and defraud, the signature of a mortgagee to a satisfaction piece by

the corporation was, as averred, false ; and, though in form a matter of belief, was in reality a misrepresentation of fact. The same may be said of the other alleged pretences.

It was neither necessary nor proper to plead the evidence of the guilty intent. The fact is set forth. The indictment is not bad if, in any aspect, an actual misrepresentation with respect to an existing fact, as distinguished from a future contingency, promise, expression of opinion, or mere naked lie, can be gathered from its averments.

The pretences are clearly averred and negatived. Now, some of these pretences are certainly pleaded *as* statements of existing fact, *e. g.*, that the mortgage was not a good security for the sum of fifteen thousand dollars, and that the complainant had made a bad investment in loaning that sum on such security. Even in form this was a statement of fact, and of an existing fact. Whether a security is good or bad is a matter of fact ; and a positive and unqualified assertion upon the subject imports personal knowledge of an existing state of things from which the fact stated is necessarily deducible.

Of course the evidence may show that the statement was a matter of opinion. That depends, not altogether upon the mere phrase, but upon the circumstances attending its use. It is sufficient to sustain the indictment that the statement was of fact and not necessarily predicated of mere opinion. As previously remarked, it is the substance and intent which is in question, rather than the form.

. If, for instance, the defendant had the money in his pocket at the time he made these statements (having, we will say, been entrusted therewith by the corporation upon the promise that it should not be used until the procurement of the satisfaction-piece), will it be said that there was no false pretence because the phrase "a bad investment" imports judgment as to value ?

Such an interpretation would defeat the entire purpose of this wholesome statute. Its evasion would then require but a little literary ingenuity in the formulating of falsehood. The object of the statute was to protect the weak and credulous against the wiles and stratagems of the artful and cunning. (Language of JEWETT, J., in *The People* v. *Crissie*, 4 Denio, 525).

This observation applies with even greater force where the case is that of a lady in the hands of her trusted legal adviser. Here the professional relation must not be overlooked. It is impressed upon and colors the statements. The parties were not on an equality. It was not like the undue puffing of his wares by a tradesman. Every word the attorney uttered carried with it the weight attached to superior knowledge acting upon the responsibility of a sacred trust.

which the mortgage is discharged, so far affects a valuable interest as to be within the purview of the statute referred to. (*The People* v. *Crissie*, 4 Denio, 525 ; *Bacon* v. *Frisbie*, 15 Hun, 26 ; *Dord* v. *The People*, 9, Barb., 675.) Judge KING remarks, in his opinion in the case last referred to, as follows : " Under the statute relative to false pretences the obtaining of the signature by the false pretence is the gist of the offence, but it having been decided, as is but reasonable, that the instrument to which the

---

Indeed, we are not prepared to say that, under such circumstances, what might otherwise be treated as a mere naked lie, would not amount to a false pretence.

As to the cases, we have examined those cited, with instruction as to the general principle involved and with admiration of the firm purpose displayed by many eminent judges to interpret and administer the statute in the interest of morality and fair dealing (notably the remarks of Chancellor WALWORTH in *The People* v. *Haynes*, 14 Wend., 546) but without discovering their special applicability to the case at bar, except in a single instance. That is the case of *The People* v. *Tomlin*, 5 Dutcher (N. J.), 13. The tendency of this case is to sustain the present indictment. The defendant there represented that "Tomlin *was insolvent.*" This was held to be a statement of an existing fact. Yet such a statement may well have been predicated of the estimated value of Tomlin's assets. But the court said : " Can the positive declaration of that fact by the defendants be held to be a mere conjecture or uncertain opinion ? The *status* of the debtor is a fact, and he who unqualifiedly undertakes to declare what such *status* is, represents a fact, and does not express an opinion merely."

It is true, the court added, that if the statement had been confined to Tomlin's inability to pay, it would have been a naked assertion, which, if untrue, would have been a simple lie. The remark was *obiter*, and we confess that the distinction seems somewhat shadowy. In that particular, however, the cases are not analogous while in what was decided they are.

The positive declaration here that the security was not good, and that the investment was bad, was as much an assertion as to an existing fact, as that Tomlin was insolvent ; and there was quite as much of conjecture or mere uncertain opinion in the latter as in the former statement.

(2.) Next, it is contended that a satisfaction-piece is not a written instrument within the meaning of the statute, and for the reason that it creates no liability. We are unable to perceive the force of this much urged objection.

There is no such limitation in the statute itself, and the cases all hold that it is only necessary that the instrument should not be utterly worthless (*The People* v. *Galloway*, 17 Wend., 540 ; *The same* v. *Crissie*, 4 Denio, 528 ; *The same* v. *Stone*, 9 Wend., 182 ; *The same* v. *Genung*, 11 id., 18 ; *The same* v. *Gates*, 13 id., 320), otherwise, said BRONSON, J., in the case first cited, " a man might be punished criminally for obtaining the signature of another to an idle letter, or any other writing of no legal importance."

It need only appear that the instrument, on its face, is one calculated to prejudice the party who has signed it (*The People* v. *Crissie, ubi sup.*)

' An instrument is defined by Burrill as a writing expressive of some act.

signature was affixed should be one *which might possibly preju-
dice the party,*" etc. (*The People* v. *Sully,* 5 Park. C. Rep., 143;
*The People* v. *Galloway,* 17 Wend., 540.) In the case we are
considering, by the execution and delivery of the satisfaction
piece it was intended that the mortgage should be discharged, and
that result was accomplished, in consequence of the statement of
Therasson that the mortgage was not a good investment. He
procured the money, and without the consent of Mrs. Zabriskie
appropriated the same to his own use, and she was thereby sub-

---

Here the act was the formal acknowledgment of satisfaction. It tended to the
injury of the complainant, in that, according to well-settled custom, it was requi-
site to obtain payment, and in that, according to law, the mortgage could not
otherwise be satisfied of record.

A distinction was attempted to be drawn between an instrument creating
and one discharging an obligation, on the ground that in the latter case injury
can only result from the use of the instrument. But how can injury result in the
former case without use?

It is further argued that there was no crime, because the use of the instru-
ment was contemplated, and the conversion of the money was not a false pre-
tence. This is another way of asserting that the instrument is not within the
statute. The crime does not consist of the conversion of the money, but of the
false pretence whereby the instrument was obtained.

Substitute a note for the satisfaction-piece, and where is the distinction? By
means of a false pretence the note is obtained for the express purpose of raising
money for the complainant. It might with equal force be said (we quote from
the language of counsel with respect to the satisfaction-piece) that the use of the
note cheated no one, that it effected a proper and legitimate purpose, and that
the complainant received (through her agent) just what the note was designed to
raise!

The question would still recur, was the note obtained by false pretences? It
all comes back to the original proposition, that the satisfaction-piece is just as
much an instrument within the statute as the note. The question is not whether
the money could have been obtained upon the satisfaction-piece without the mort-
gage, or upon the mortgage without the satisfaction-piece, but whether a writing
acknowledging the payment of a debt, and consenting to a record discharge of
the security therefor, is a mere worthless piece of paper.

(3.) There is nothing in the point that the fraudulent use of the instrument
or some actual damage to the complainant should have been averred. The
offence is complete when the signature is obtained by false pretences, with intent
to cheat and defraud. (*The People* v. *Genung, ubi sup.; The same* v. *Stone, ubi
sup.*) The intent is averred, and, to support it, the fraudulent use may be
proved.

In our judgment the indictment is sufficient in form and substance, and the
demurrer must be overruled, with judgment against the defendant.

"*Respondeat Ouster.*"

jected to a serious pecuniary loss. The facts show clearly that Therasson could not have entertained the opinion that the mortgage was not a good investment, as he is shown to have possessed actual knowledge, at the time, to the contrary. It was the statement of an existing fact which at the time he knew to be untrue, and was intended to control the conduct of Mrs. Zabriskie, and was not merely the expression of his opinion, accompanied with a fair statement of the facts as he understood them, leaving it for her to weigh all the circumstances and to form her own judgment in regard to the soundness of the security, and whether it would be for her interest to discharge the same. He, at the time, could not have entertained a doubt in regard to the soundness of the security.

Charles Mott, the secretary of the church, testified as follows in regard to the ability of the church to pay the mortgage, and that Therasson was informed thereof, and of its desire to satisfy the same :

Q. Can you state whether or not this corporation made any attempt early in 1875 to pay off any mortgages outstanding against them ?

A. I can.

Q. What was the fact in regard to that ?

A. The fact was that in the month of January, 1875, the church came into possession of nearly $40,000 in cash, and early in the month of February a resolution was adopted authorizing the treasurer out of those moneys to pay any mortgages of the church whether due or not, provided the consent of the mortgagees could be obtained.　＊　＊　＊

Q. In consequence of that resolution did you take any steps with regard to the Zabriskie mortgage ?

A. Immediately after the adoption I notified Mr. Therasson of the resolution and asked if the mortgage given to Mrs. Zabriskie could be paid.

Q. Well, you say immediately after the passage of that resolution ; can you give the date of the passage of the resolution ?

A. My book of minutes is at the other end of the table.

Q. Is this it ?

A. That's it.

Q. If you will just fix the date, if you can,· of the adoption of that resolution ?

A. [Reads.] February 12, 1875.

Q. And you say that immediately after the adoption of that you notified Mr. Therasson ?

A. Yes, sir.

Q. By immediately after do you mean within a day or two ?

A. Yes, sir ; very possibly the next day, but immediately after.

Q. What did you say to him, precisely ?

A. I told him of the adoption of the resolution, and asked him if the mortgage given to Mrs. Zabriskie could be paid.

Q. What answer did he make, if any ?

A. He said that he couldn't say positively whether he could or not ; that it was regarded as a good investment, and he would have to see Mrs. Zabriskie about it·; that he would see her and notify me of her decision.

Q. At that time did you inform him of the fact of the possession by the church of money which they wished applied in this way ?

A. I had done that prior.

The indictment charges as follows : " Whereas, in fact and in truth, the said Louis F. Therasson, well knew the said pretences and representations so by him made as aforesaid, to the said Sarah J. Zabriskie, to be utterly false and untrue at the time of making the same." The finding of the jury which, in. effect, sustains that allegation, is supported by competent evidence ; as we have seen, he was informed that the church had received $40,000 with which it desired to pay the mortgage in question, as well as other incumbrances. The conclusion from the facts, established by the verdict of the jury, seems inevitable that Therasson made a deliberate statement to Mrs. Zabriskie which he knew to be false, and which he desired and expected would induce her to execute and deliver the satisfaction piece, thereby enabling him to procure the money, and to devote the same to his own use. The suppression of the facts, which are shown to have been within his knowledge at the time, in regard to the pecuniary condition of the church, and the desire to pay the mortgage, indicates that he did not intend to express his opin-

First Department, January Term, 1880.

ion in regard to the security; but by the representations to convey to her mind an impression which he knew to be without founda- tion and contrary to any opinion which he could possibly have entertained.

Sarah J. Zabriskie testified upon the trial as follows :

Q. Will you please state what took place between Mr. Theras- son and yourself with regard to this investment ?

A. To my surprise, he told me it was not a good investment; I replied that he got it for me, and he always said his invest- ments were the best; he said he could do better with it, and I remarked that they paid their interest regularly, "what more do we want ; " he remarked that he could do better.

Q. What was said with regard to the nature of the invest- ment ?

A. He said it was not a good investment, which, as I say, surprised me.

She further testified that she was not informed, prior to the execution of the satisfaction piece, that the church had the money, and desired to pay the mortgage ; and that for a long time subsequent thereto she supposed the mortgage had not been discharged ; that written statements had been furnished her by Therasson, in regard to her investments, which contained one item "church loan $15,000 " and in connection therewith carrying out the annual interest ; such statements were cal- culated to mislead, by creating the impression that the mortgage remained undischarged.    The evidence shows that Therasson and Mrs. Zabriskie had been intimate friends for a long time previous to the transaction in question, and that she had been in the habit of consulting him in regard to her business ; and that he was her legal adviser, from which it is reasonable to infer that she confided in him and would be likely to follow his direction in regard to a matter of business ; he procured the loan in question, and was, or should have been, familiar with the value of the security ; assuming her evidence to be entitled to credit and that it exhibits the transaction as it actually occurred, we are unable to perceive wherein there is any failure in the proof to sustain the offence charged in the indictment ; it is true the evidence of the plaintiff in error upon the trial was in direct

conflict with that of Mrs. Zabriskie upon material questions; yet it became the duty of the jury to determine, in the light of all the circumstances, which was entitled to be credited, and we are unable to declare, in view of all the facts and circumstances of this case, that the jury were not justified in the conclusion at which they arrived; it is evident from the recommendation which accompanied the verdict that the jury were influenced by no feelings of prejudice or unkindness towards the prisoner, but were constrained by the force of the evidence to render the verdict which they declared. The charge of the judge seems to us unobjectionable and sufficiently favorable to the prisoner, as much so as the facts and law would justify. The refusal of the judge to charge the following proposition accompanied as such refusal was with additional direction by the judge, and considered in the light of the entire charge we do not think material error.

" I ask your honor to charge the jury that, although they may find the false pretence to have been made, although they may find the necessary fraudulent intent, that in determining the question whether the pretence exerted a material influence over the mind of Mrs. Zabriskie, they have no right to consider the question or the evidence as to the fraudulent intent, or as to the false representation."

The Court — I charge they have a right to consider all the evidence in the case bearing on that subject, directly or indirectly. Exception was taken to the court's refusing to charge.

Mr. Beach — On the contrary, I ask you to say to the jury that there is no sufficient evidence upon which they can justly find, in the absence of testimony on that point by Mrs. Zabriskie, that the alleged false pretence, as proven, did exert a mateiarl influence.

The Court — That I decline. Defendant excepted.

Whether the false representation did exert a material influence upon the mind of Mrs. Zabriskie was certainly a question which the jury were to settle as an important fact in the case, in the same manner other facts were required to be established.

Mrs. Zabriskie might have been asked, when on the stand as a witness, whether she was induced by the representations to execute the paper in question. (*The People* v. *Sully*, 5 Park., 142;

*People* v. *Herrick*, 13 Wend., 87.) Yet it was equally competent for the jury to determine that question from all the evidence, and certainly the latter course was more favorable to the prisoner. Suppose she had been asked the question directly, and had answered in the affirmative, it cannot be doubted but that the jury might have been asked by the prisoner, upon all the evidence, to discredit such statement. So after all we perceive that as a fact it could be established as other facts in the case. The jury were at liberty to infer from all the evidence the influence which the representations must or should have produced upon the mind of Mrs. Zabriskie. (*Thomas* v. *The People*, 34 N. Y., 351.) The proof of the contents of the letter claimed to have been addressed to Mrs. Zabriskie was properly rejected, because it may have been sent by a clerk of the prisoner, in which event the clerk would be a competent witness to prove its delivery, and as the defence sought the benefit of secondary evidence, a case therefor must have been established before it could be resorted to. We have carefully examined this case, impressed with its vital importance to the prisoner, and with a desire to discover whether any error has intervened prejudicial to his case, and are convinced that the indictment is sufficient in law, and the verdict of the jury is supported by competent evidence.

The conviction must be affirmed.

BRADY, J. :

The only doubt I entertain about the legality of the conviction in this case rests upon the extended character of the cross-examination of the defendant, and by which various subjects seemingly foreign to the charge against him were investigated, and it may be to his prejudice. I cannot say, however, that it was not warranted by his examination in chief, in which explanations were given, and which, doubtless, within existing rules opened the door so as to admit the inquiries made by the prosecution. It has been recently suggested by the Court of Appeals, and with great force, that accused persons are to be dealt with in reference to the particular offence charged, and with reference to that alone, all extraneous matters not bearing upon it legitimately being carefully excluded.

It may be said, generally, that a bad man may be guiltless of a crime charged against him, and yet his moral status, if known, would in the majority of instances prejudice him on trial. It is the result of suspicion which naturally springs out of the element of bad or doubtful character, and against which good character would generally be a perfect shield. And in a case like this, where a confidential relation existed between the complainant and the defendant, any mismanagement of her affairs, any conduct creating suspicions of unfairness would tend to magnify the elements which lead to the conclusion that a false pretence, if made, was made with a fraudulent intent.

It is the province of courts in the administration of criminal justice to protect the accused against extraneous influences. The majesty of the law is never conserved by the conviction of a person on doubtful grounds or by processes which are in themselves doubtful on the score of exact justice. When, however, the accused, from the seeming necessity of the situation in which he is placed, departs from the line of examination which would otherwise be observed, he cannot complain, perhaps, that it has exposed a more extended field of inquiry, the consequences of which were disastrous or prejudicial. I deem it my duty, therefore, to concur in the opinion of Justice Ingalls.

Present — Brady and Ingalls, JJ.

Judgment affirmed.