SAMUEL WATSON, PLAINTIFF IN ERROR, v. THE PEOPLE OF THE STATE OF NEW YORK, DEFENDANTS IN ERROR.

*Obtaining money by false pretenses — what false representation on a sale will subject the seller to an indictment therefor — He is not relieved by the giving of a written warranty — or by the failure of the purchaser to examine as to the truth of the representation — 3 R. S. (5th ed.), 956, sec. 55.*

One who has induced another to purchase a horse from him, by falsely representing it to be kind and sound, when he knew the horse to be unsound and worthless, may be indicted and convicted under section 55 (3 R. S. [5th ed.], 956), of obtaining money by false pretenses.

His liability to such indictment and conviction is not affected by the fact that, at the time of or immediately after the sale, he gave to the purchaser a written warranty of the horse; or by the fact that the purchaser could have discovered the unsoundness by putting the horse in motion.

WRIT OF ERROR to the Court of General Sessions of the county of New York, to review a conviction of the prisoner of the offense of obtaining money by false pretenses.

*William F. Kintzing,* for the plaintiff in error.

*Daniel G. Rollins,* for the People.

DANIELS, J.:

The prisoner, aided by another person, was charged with having represented a horse, which was sold to the complaining witness, to be kind and sound, when that was known not to be the fact, and the horse was unsound and worthless. The making of the representation was sufficiently established by the evidence which was given, to submit the point to the jury; and the question is whether, if in the event it proved to be true, the indictment could be legally predicated upon it. Cases have been relied upon in behalf of the prisoner which are supposed to maintain the legal proposition that such a representation, though false and inducing the person to whom it may be made to part with his money or his property, will not support an indictment. But these cases arose under the common law, which only rendered frauds indictable when they were perpetrated either

by means of a conspiracy or a false token. (*The King* v. *Lara*, 6 Durn. & E., 565.)

*Reg.* v. *Pywell* (1 Starkie, 402), is also a case of the same description. For that reason it was held in the first of these cases that a delivery of the purchaser's check upon a banker when he was without funds to meet it, for the purchase-price of property obtained, was not a criminal offense. But after the enactment of the statute (7 and 8 Geo. IV., chap. 29, § 53) these cases ceased to be authority. And in *Rex* v. *Jackson* (3 Campbell, 370), which arose after the statute, a conviction was had under its provisions, for what had been held in Lara's case was not a criminal offense. The case of *Reg.* v. *Keighley* (7 Cox C. C., 217) also fails to sustain this position of the prisoner's counsel, for the conviction was set aside simply because it could not be seen upon what ground it had proceeded. The propriety of submitting such a case to a jury was in terms conceded by Pollock, C. B., in his opinion. The conviction was not disturbed because the facts charged did not create an indictable offense, but wholly and solely for the reason that the prisoner did not appear to have been rightly convicted under the indictment. In *Reg.* v. *Levine* (10 id., 374), the prosecution failed, because the evidence did not establish a false representation of any existing fact operating upon the mind of the buyer, and deceiving him in such a manner that he could not protect himself. Neither of these cases, nor any of the others cited for this purpose, sustain the proposition supposed to be supported by them. They could not properly have that effect, for the English statute was enacted in substantially the same terms as those contained in the statute existing in this State. They were both designed to correct the deficiencies of the common law, and to extend the protection which was found to be necessary against the artful devices and false representations of persons fraudulently endeavoring to obtain the property or money of others. Under these statutes all that has been required to secure a conviction is, that the prisoner, with intent to cheat or defraud another, shall designedly, either by color of a false token, or writing, or some other false pretense, obtain his signature, or obtain from him any money, personal property, or valuable thing. (3 R. S. [5th ed.], 956, § 55.)

These terms are broad and comprehensive, including every

description of personal property, and certainly not excepting a transaction for the sale of a horse. What the law requires is, that there shall be some false representation, so far operating on the mind of the party to whom it may be made, as to induce him to part with his money or his property, and one representation may be sufficient for that purpose, even though others may be alleged in the indictment. (*Thomas* v. *People*, 34 N. Y., 351.)

In *The People* v. *Crissie* (4 Denio, 525), the false representation was made concerning sheep appearing to be lame, and it was held to be sufficient within the terms of the statute to justify a conviction. No practical distinction can be drawn between that case and the one now under consideration, for they were both equally within the terms of the statute. In the case of *Scott* v. *People* (62 Barb., 62), the conviction was set aside because the representation relied upon was not made in such a manner as to bring it within the terms made use of in the statute. Neither that nor any other authority entitled the prisoner to have this point withdrawn from the consideration of the jury.

About the time of, or immediately after the sale a written warranty of this horse was given to the purchaser, and for that reason, also, it has been insisted that the case was excluded from the terms of the statute. But its language admits of no such construction. And there is nothing in the nature of such a warranty which would exonerate the prisoner from the consequences of an additional fraudulent representation concerning a materially existing fact. That was so held in *Reg.* v. *West* (27 S. J. Mag. Cases, 227), and *Reg.* v. *Jennison* (31 id., 146). In transactions of this nature it is very common for a binding warranty to be given, where the sale has been brought about by means of a false representation sufficient to render it criminal under the terms of the statute. This was a case of that nature. The representation did relate to an existing fact, and it was so material in its character as to induce the purchaser to take the horse, when he would not otherwise have done so.

After that had been agreed upon, and the money had been paid, the horse was taken from the stable and found to be wind-broken and useless. Then he was told by one of these parties, in the presence of the other, that he had been sold, that the horse was not worth a dollar. An offer, however, was made to take him back for

five dollars, which was finally increased to forty, but neither was accepted by the purchaser, who returned the horse to the stable and demanded his money. This statement was sufficient to justify the jury in concluding that the representation had been intentionally as well as falsely made. And it sustained, therefore, this additional element required by the statute to be made out by proof to bring the case within its provisions.

As it appeared that the unsoundness of the horse was capable of being discovered by putting him in motion, it has been further urged that the purchaser was bound to do that before he could rely upon the representation made and complete the purchase. In support of this proposition cases have been relied upon which sustained that principle in its application to what were known as cheats at common law, but they are not authority in those arising under this provision of the statute. It was, on the contrary, enacted to supply and correct the deficiencies of the common law, and in its enactment it has been made subject to no such qualification. What is required, and all that is required to make out a case of this description is, that the false representation shall relate to some existing matter of fact and be attended with the effect of obtaining from the person to whom it may be made money, personal property or other valuable things. What is necessary to make out the case as it has been defined is that the party shall be deceived to his prejudice or loss by means of a designedly false statement. After the enactment of this statute, and of others elsewhere of similar import, a disposition at first did exist to subject its execution to this restrictive principle of the common law. But such an administration of the act was attended with the effect of including within its protection only those who were so intelligent, experienced and sagacious as to be able to protect themselves, while it left the large class of confiding and credulous persons, who are disposed to believe to be true what may be plausibly represented to them, entirely at the mercy of fraudulent dealers. This could not have been the object of the legislature in making this change in the law, for it would be practically nullified by such a construction of its effect; and for that reason, upon further consideration, this conclusion was rejected as unsound and a rule of construction more consonent to the terms of the statute was adopted by the courts. Under that, whenever one

person may designedly make to another a false representation concerning some existing fact material to be considered in the transaction, and in that manner deceives the person to whom the representation may be made and obtains his money or his property from him, a case is presented which is within the terms of the statute. This was considered to be its just and proper construction by the chancellor in *People* v. *Haynes* (14 Wend., 547), but the case was disposed of finally upon a different consideration. This point was not determined by the court. *The People* v. *Williams* (4 Hill, 9) is an authority which, so far as it deals with this subject, tends in a different direction; but the intimation contained in it has not since then been followed, for in the *People* v. *Crissie (supra)* the prisoner was convicted, although the purchaser might by an examination of the feet of the sheep have probably discovered that the representation made to him was not true. In the *People* v. *Sully* (5 Parker, 143) this precise point was presented for consideration, and it was held by the Superior Court of Buffalo, in view of the terms of this statute, in a very carefully considered opinion of MASTER, J., that the proposition was unsound. This case was then taken to the Court of Appeals where it was affirmed, although no report of it was made in the reports of the decisions of that court. This is a decisive authority against the position which, upon this part of the case, has been taken in behalf of the prisoner. In the *People* v. *New York Oyer and Terminer* (83 N. Y., 437, 449) substantially the same conclusion has been sustained, for it was there held that a conviction might be had when the pretenses relied upon were calculated to deceive. If they were capable of defrauding that it was held would be sufficient.

A similar deviation from the early decisions has taken place in the English courts, where it has been held to be enough that the pretense was made knowingly, with the intent to defraud; that it was false to the knowledge of the persons making it, and that money was obtained by him thereby. (*Hamilton* v. *The Queen*, 9 Ad. & E. [N. S.], 271, 278; *Reg.* v. *Wickham*, 10 Ad. & E., 34.)

This precise point was further considered in *Reg.* v. *Woolley* (19 Law Jour., M. C., 165), where, in the course of the decision, PARKE, B., stated that formerly it was held to be necessary, in order to support an indictment, that the false pretense must be such as to impose

on a person of sound mind, but that rule is altered. "If a false pretense of an existing fact be used with the intent of imposing on the party, and does impose on him and the money is obtained by it, it is a false pretense within the meaning of the statute." (*Id.*, 167.)

Dennison's Cr. C., 559 : The tendency of the courts to apply the rejected principle of the common law to the execution of the statute was also corrected in Pennsylvania in *Com.* v. *Henry* (10 Harris [22 Penn.], 256), which held that the representation was no less a false pretense, because the party imposed upon might, by common prudence, have avoided the imposition.

For that reason it is not necessary to examine the cases in that State preceding this decision and relied upon by the prisoner's counsel. The same principle was considered to be sound and adopted in *In re Greenough* (31 Vermt., 279, 290). By the construction which is now given to statutory provisions of this nature, the case will be made out by proof of an intentional false representation concerning some existing fact, material to the transaction, when it is believed by the party to whom it may be addressed, when by means of such belief, he is induced to part with his money or his property. The case against the prisoner was sufficiently made out to require the evidence produced in support of it to be submitted to the jury. And as that was the only point which was, in terms, presented in the prisoner's behalf, it follows that the conviction should be affirmed.

DAVIS, P. J., and BRADY, J., concurred.

Conviction affirmed.