## *In re* ROBERTS, *Habeas Corpus.*[1]

(*District Court, S. D. Georgia, E. D.    May 5, 1885.*)

1. INTER-STATE EXTRADITION—JURISDICTION OF FEDERAL COURTS.
     The federal and state courts have concurrent jurisdiction in cases of extradition.    The judgments of the latter do not conclude the former on this federal question, but are entitled to great respect, and are strongly advisory.

2. SAME—INDICTMENT FOR FELONY AGAINST SEVERAL DEFENDANTS.
     Under the New York statutes an indictment against several defendants, charging grand larceny,—a felony,—is good without averments showing the degrees of guilt, whether as principal in the first or second degree, or as accessory before or after the fact.

3. SAME—ALLEGATION OF INCORPORATION.
     It seems that an allegation that a defendant stole the bonds of the Bethlehem Iron Company, without alleging the corporate character of such company, is insufficient; but the safer and better rule is to remit the question to the courts of the state in which the indictment was found.

4. HABEAS CORPUS—WHAT MAY BE INVESTIGATED UPON.
     In a case arising on writ of *habeas corpus*, sued out to determine the legality of an arrest under proceedings for extradition, the court cannot investigate the question as to the guilt or innocence of the defendant.

5. "FUGITIVE FROM JUSTICE"—WHO IS.
     One who goes into a state, and commits a crime, and returns home, is as much a fugitive from justice as though he had committed a crime in the state in which he resided and then fled to some other state.

Roberts, president of the Augusta Bank, had been arrested by executive warrant of the governor of Georgia, issued on the requisition of the governor of New York.    While in the custody of the agent of the latter state, the writ was sued out by the prisoner.

*J. C. C. Black, Hook & Montgomery, George A. Mercer,* and *H. D. D. Twiggs,* for petitioner.

*Frank H. Miller, Chisolm & Erwin,* and *Boykin Wright, contra.*

SPEER, J.    The constitution of the United States, art. 4, § 2, provides that a person charged in any state with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall, on the demand of the executive authority of the state from which he fled, be delivered up to be removed to the state having jurisdiction of the crime.    This provision of the organic law received the careful consideration of the federal convention.    Certain changes were made in phraseology showing the settled purpose of its framers to make it the policy of the Union to surrender in one state the fugitives from justice in another.    It is a settled rule of interstate comity, and imposes an absolute obligation on each state in a proper case made before its chief executive officer, to surrender and facilitate the extradition of parties charged with crime in the other states of the Union.    By the act of congress of 1793, (section 5278 of the Revised Statutes,) appropriate legislation for the enforcement of this constitutional provision was had; and this legislation has itself received the

[1] Reported by W. B Hill, Esq., of the Macon bar.

lofty sanction afforded by the approval by the supreme court of the United States of its constitutionality and effectiveness to enforce the original compact between the states upon this subject, so important to the punishment of crime and the maintenance of social order. *Prigg* v. *Com.* 16 Pet. 539. Nor have the several states been tardy in the enactment of auxiliary legislation to accomplish the object for which the national law is framed; and the state of Georgia is direct and explicit in its enactments to this end. See Code, §§ 54–58.

While the duty of the executive is thus plainly marked out, it is also the province of the courts on inquiry, by means of *habeas corpus*, to determine the legality of the detention of the party whose extradition is sought; and since the federal legislation of necessity is invoked to extradite the prisoner, the courts of the United States have jurisdiction to determine the question of the legality of his arrest. Rev. St. 735. The courts of the state have also concurrent jurisdiction of the same question, but the resulting judgments of this jurisdiction are not necessarily decisive, and do not conclude the courts of the United States on this federal question, though they are entitled to great respect, and are strongly advisory.

In the case before the court, the duly-authenticated copy of the indictment of the defendant and one Walton for the offense of grand larceny, said indictment purporting to have been returned by the grand jury of the state and county of New York, together with the requisition of the governor of the state of New York, and the consequent order of the governor of Georgia, is presented as the warrant for the arrest and proposed extradition.

It is objected by the counsel for the relator that the indictment does not show a proper charge of crime. It is urged that the crime set out, to-wit, grand larceny, is a felony, and that the indictment is against several defendants, and that there are no averments showing the degrees of the guilt, whether as principal in the first or second degree, or as accessory before or after the fact. This objection, in the opinion of the court, would have been dangerous to the validity of the indictment, it being a felony, under the rules of the common law. This indictment, however, must be considered in the light of the statutory regulations pertinent thereto in the state of New York, and we find that in that state parties charged with felony are indicted jointly, precisely as were misdemeanors at common law. 2 Rev. St. N. Y. § 698.

In New York it appears that this rule applies to the whole range of felonies, and, as a consequence, it follows that principals in the second degree may be indicted and prosecuted as principals in the first. This is the doctrine of the common law, where the punishment is the same. Archb. Crim. Pl. (8th Amer. Ed.) 63. The objection, therefore, is not sustained.

It is further objected to the legality of this detention that the in-

dictment does not properly allege the ownership of the bonds alleged
to have been stolen, and that the allegation that they were the bonds
of the Bethlehem Iron Company, without alleging the corporate char-
acter of such company, is a fatal defect.    Unquestionably there is au-
thority pointing to this conclusion.    After careful and anxious con-
sideration of this question the court feels it to be improper that it
should discharge the defendant on this ground, and thinks it in every
view safer and the better rule to remit the question of the sufficiency
of the indictment to be tried and determined by the courts of the
state in which it was found.    The settled policy of the government
being to facilitate the extradition of fugitives charged with crime, and,
in view of the great importance of this policy to the commercial pros-
perity of the country and the integrity in business transactions be-
tween the citizens of the several states, it would be a dangerous prec-
edent, and as well in conflict with eminent authority, to hold that
such matters of technical irregularity must deny the extradition.

Certain affidavits are also offered by the relator, the practical ef-
fect of which is a denial of guilt.    It is sufficient to say that the court
in this proceeding will not consider that question.    A proper charge
of crime having been presented to the court, it is our undoubted duty
to decline to investigate the guilt or innocence of the prisoner.    The
authorities upon this question are numerous, conclusive, and adverse
to the contention of the counsel for relator.    It would be otherwise
were the arrest made upon preliminary process, and before indict-
ment.    In that event investigation would be had, at least, to disclose
if there be a prosecution in good faith, and if there be probable cause
to suspect the guilt of the party accused.

It is further urged, and with great apparent confidence, by the dis-
tinguished counsel for the relator, that the facts do not show that the
relator is a fugitive from justice.    It is the opinion of the court that
one who goes into a state and commits a crime, and then returns
home, is as much a fugitive from justice as though he had committed
a crime in the state in which he resided and then fled to some other
state.

With the other considerations personal to the relator, advanced by
counsel, the court can properly have no concern.    The law is inex-
orable, and the court is but its servant, and must, like all others, obey
its teachings.    The writ is disallowed, and the petition of the relator
dismissed.