'(*Circuit Court of Cook County.*)

## People ex rel. A. S. Whitman

### vs.

## John Shea and Henry C. Jones.

(December, 1894.)

1. HABEAS CORPUS—FUGITIVE FROM JUSTICE—EXTRADITION—INQUIRY AS TO COMMISSION OF CRIME. It is not permissible on the trial of the habeas corpus case brought on behalf of an alleged fugitive from justice to consider whether or not a crime has in fact been committed in the state asking the return of the prisoner.

. SAME—GOOD FAITH OF PROSECUTION. It is not proper in a habeas corpus proceedings brought to try the legality of restraint of a person alleged to be a fugitive from justice to inquire into the good faith of the prosecution in the state asking his return.

3. SAME—DUTY OF GOVERNOR—SUFFICIENCY OF EXTRADITION PAPERS —PROVINCE OF COURTS. If the indictment or affidavit upon which the requisition is based does not show upon its face that a crime is *charged* against the alleged fugitive the executive should not act thereon, and if he do so improvidently or mistakenly, it is unquestionably within the power of the court to consider the affidavit and warrant submitted to the executive and pass judicially upon their sufficiency and if insufficient order the release of the prisoner.

4. CRIMINAL LAW—OBTAINING MONEY UNDER FALSE PRETENCES—NATURE OF OFFENSE. The offense of "obtaining money under false pretenses" was not a common law offense but is of purely statutory origin.

5. SAME—ALLEGATIONS NECESSARY TO CHARGE OFFENSE. To hold a person charged with having committed the ordinary statutory crime of "obtaining money under false pretenses" as a fugitive from justice there must be allegations showing that there was a fraudulent statement of *existing facts*, a knowledge on the part of the defendant of their false and fraudulent character, an intent to deceive and defraud, and an obtaining of the money and the property of another thereby; the mere allegation that the defendant has committed against the law of the demanding state the crime of obtaining money by false pretenses is insufficient.

6. PRACTICE—AMENDING INSUFFICIENT HABEAS CORPUS RETURN TO SHOW ALLEGED FUGITIVE ACTUALLY CHARGED WITH CRIME IN DEMANDING STATE. Where the return to a writ of habeas corpus to obtain the discharge of a person arrested as a fugitive from justice, is insufficient to show that he is charged with a crime in the demanding state the court will allow the defendants in the habeas corpus proceedings to amend their return to show that he is, if such be the fact.

7. HABEAS CORPUS—FUGITIVE FROM JUSTICE—GOVERNOR'S WARRANT— WHAT SHOWS REGULAR AFFIDAVIT IN DEMANDING STATE. A recital in the governor's warrant that there was produced and laid before him a copy of a warrant and affidavit made by and before a *properly empowered officer in and of the State of North Carolina in accordance with the laws thereof* is sufficient to show that the affidavit upon which the North Carolina warrant was issued was made by a duly authorized official in the course of a judicial proceeding.

Petition for discharge on habeas corpus. Heard before Judge Edward F. Dunne. The facts are stated in the opinion.

*W. E. Mason* and *Joseph T. Kretzinger,* attorneys for relator.

*F. A. Dennison,* attorney for defendants.

DUNNE, J.:—

Relator Whitman has filed in this court his petition for release, under the Habeas Corpus Act, alleging therein that he is illegally restrained of his liberty by the defendants. The defendants in their return deny that defendant Shea has custody of the relator, but admit that defendant Jones has such custody, and aver that he, Jones, as agent of the governor of North Carolina, rightfully and lawfully detains the prisoner by virtue of a warrant of the governor of Illinois, issued upon the requisition of the governor of North Carolina; said warrant containing the following recital:—

"The executive authority of the state of North Carolina demands of me the apprehension and delivery of A. S. Whitman, represented to be a fugitive from justice; and has moreover produced and laid before me the copy of a warrant and affidavits, made by and before a properly empowered officer in and of the said state in accordance with the laws thereof, charging A. S. Whitman, the person so demanded, with having committed against the laws of said state *the crime of obtaining money under false pretenses;* which appears by the said copy of a warrant and affidavit certified as authentic by the governor of said state, now on file in the office of the secretary of the state of Illinois; and being satisfied that the said A. S. Whitman is a fugutive from justice and has fled from the state of North Carolina, etc."

After this recital the apprehension and delivery of the said Whitman is ordered. Relator demurs to this return and asks his discharge on the following grounds: 1st. That no crime was in fact committed in the state of North Carolina. 2nd. That the recital of the alleged crime contained in the warrant of the governor of Illinois does not, upon its face, show that the relator was *charged* in the affidavit with the commission of a crime known to the law of either state. 3rd. That the

warrant of the governor of Illinois does not, in its recital, show that the affidavit upon which the North Carolina warrant for the relator's arrest was made before a legally authorized officer in the course of a judicial proceeding.

In view of the serious charges made by counsel for the relator, affecting the *bona fides* of the prosecution, the court *in limine* has heard certain oral testimony. In substance the testimony disclosed the following state of facts:

The relator was a member of a Chicago firm having a bank account in a Chicago bank which ranged from sixteen thousand dollars to a few dollars. At no time within thirty days prior to the commission of the alleged crime, did relator or his firm have over two hundred dollars on deposit.

On the ........ day of ............ , 1894, the relator presented a letter of introduction from one Hayes, a resident of Chicago, to a mercantile firm in North Carolina, on the faith of which relator succeeded in getting this firm to cash his check for $1,970 upon the Chicago bank. Upon the presentation of the check it was marked "insufficient funds" and dishonored, there being on deposit on the day of presentation only two dollars, or thereabout.

Upon the return to North Carolina of the dishonored check, the North Carolina firm telegraphed Hayes, who promptly made good the loss sustained by the North Carolina firm and requested it, by telegram, to swear out a warrant for the arrest of the relator for obtaining money under false pretenses.

Such proceedings were taken and were the basis for the issuance of the warrant for relator's arrest by the governor of Illinois.

Pending the requisition from North Carolina the relator was arrested on a fugitive warrant issued by a justice of the peace of Cook county upon the affidavit of Hayes, and either paid or indemnified Hayes against loss. Under this state of facts it was strenuously contended by the relator that the prosecution in North Carolina was not in good faith, inasmuch as it was instigated by Hayes for the collection of a debt; and would be futile if in good faith, for the reason that

one essential element of the evidence for the prosecution, to-wit, the condition of the relator's bank account in the Chicago bank, could only be proved by the officers of the bank who were beyond the reach of the North Carolina court, and flatly refused to concern themselves with the prosecution.

If, under the law, it were permissible on the trial of a *habeas corpus* case to inquire into the question as to whether or not a crime had in fact been committed in North Carolina, or to examine into the *bona fides* of a criminal prosecution entered into in another state, the evidence offered in this case would tend to move the court to discharge the prisoner from custody. This consideration has induced the court to carefully examine the authorities in point. Such examination has brought the court to the conclusion that on the trial of a *habeas corpus* case the court has not the right to consider the question as to whether or not a crime has in fact been committed in another state. Nor has it the right to examine into the good faith of the prosecution.

The authorities almost unanimously hold as an elementary principle that a person accused of a crime must be tried in the state where the offense was committed; and that to inquire into his guilt or innocence where the offense was not committed, is in derogation of all the principles of common and statutory law. That must be left to the court of the state where the crime is alleged to have been committed. *In re Greenough,* 31 Vt. 279; *In re Clark,* 9 Wend. 212; *Kingsbury's Case,* 106 Mass. 223.

On *habeas corpus* a court or judge before whom a prisoner is brought, arrested as a fugitive from justice, by a warrant issued by the executive of another state, will not inquire into the probable guilt of the accused. *Davis's Case,* 122 Mass. 324; *People v. Pinkerton,* 77 N. Y. 245; *Norris v. State,* 25 Ohio St. 217; Sedgwick on Constitutional Law, 395; Hurd on Habeas Corpus, secs. 327–388; Cooley's Constitutional Law, 16.

If upon the hearing of a *habeas corpus* case a court cannot inquire into the fact, as to whether a crime has in fact been

committed, as the above authorities establish, it necessarily follows that the good faith of the prosecution is not within the range of inquiry.

If the paramount question of the guilt or innocence of the relator cannot be inquired into, it would be idle formality to investigate a collateral issue such as the motives of the prosecution.

The second objection to the defendants' return, made by the relator in this case, presents, however, a more serious question.

Does the governor's warrant show upon its face that the relator has been charged with the commission of a crime? If it does not, this court is of the opinion that the relator should be discharged unless further proof is adduced that the relator was in fact charged with such crimes.

Counsel for the defendants has contended that "a regular demand under the act of congress, and warrant of the governor to surrender a fugitive, is conclusive; and the court or judge cannot, on *habeas corpus* inquire further into the offense charged." Citing in support of this contention, *Adams v. Buzine,* 4 Harrington (Del.), 572.

Counsel's position, in other words is, that if the warrant is duly issued, the court upon *habeas corpus* can go behind it only so far as to entertain the question as to the identity of the alleged fugitive.

This position he claims is supported by the following authorities: *State v. Schlemn,* 4 Harrington (Del.), 577; *Commonwealth v. Daniels,* 6 Pa. Law Journal (4 Clark), 417; *In re Clark,* 9 Wend. 218.

The best considered cases, in the opinion of this court, do not support this contention of counsel.

In the matter of *Peter B. Manchester,* 5 Cal. 237, MURRAY, Chief Justice, in delivering the opinion of the court, says:

"It may be as well to state, *in limine,* that I do not consider, under the distribution of powers by the constitution of this state, the judiciary are denied jurisdiction in this class of cases. The very object of the *habeas corpus* was to reach

just such cases; and while the courts of the state possess no power to control the executive discretion, and compel a surrender, *yet, having once acted, that discretion may be examined into, in every case where the liberty of the subject is involved.*

"The extradition of the subject is a dangerous power, which cannot be too carefully watched, and ought not to be trusted alone to the executive. \* \* \*"

*In re Roberts,* 24 Fed. 132, Speer, Justice, held that "while the duty of the executive is thus plainly marked out, it is also the province of the courts on inquiry, by means of *habeas corpus,* to determine the legality of the detention of the party whose extradition is sought."

In *People v. Brady,* 56 N. Y. 182, 188, the court, in passing on a state of facts almost identically the same as these presented in the case at bar, declares, that "It does not appear that an indictment has been found against the relator; and the question arises whether the affidavits charge him with the commission of a crime in the state of Michigan; for unless this appears, they are fatally defective, and the warrant for his rendition was unauthorized."

*In re Doo Woon,* 18 Fed. 898, the court makes use of the following language:

"The executive of this state, in allowing the requisition of the executive of California, acts under the authority of the United States statute, and must conform to its directions and limitations. *Kentucky v. Dennison,* 24 How. 66. One of these is that before he can allow a warrant of extradition he must be furnished with a copy of an indictment or affidavit charging the person demanded with the commission of a crime against the laws of California. Without this he has no jurisdiction. A case for the exercise of his authority, in this respect, is not presented, and so far does not exist. And the warrant must bear upon its face the evidence that it was duly issued, and therefore, unless it recites or sets forth the indictment or affidavit upon which it is founded, it is illegal and void."

As is indicated by the authorities just cited, it is undoubtedly the province of the court or judge, on the trial of a. *habeas corpus* case, to examine into and consider the extradition papers and the indictment or affidavit and warrant upon which the same is based.

The executive in issuing a warrant upon the requisition of the governor of another state, acts in a ministerial and not in a judicial capacity.

If the law governing requisitions and extradition has not been strictly complied with, the governor should not issue his warrant for the apprehension of an alleged fugitive. If the indictment or affidavit upon which the requisition is based. does not show upon its face that a crime is *charged* against the alleged fugitive, the executive should not act thereon, and if he do so, improvidently or mistakenly, it is unquestionably within the power of a court to consider the indictment or affidavit and warrant submitted to the executive and pass judicially upon their sufficiency. And if they be found invalid or defective, it should order the release of the prisoner.

Holding this view of the law, the court, in the case at bar,. has carefully considered the recital in the governor's warrant, which is made a part of the return. The recital in the said warrant, setting out the offense, is in the following words:

"With having committed against the laws of the state of North Carolina, the crime of obtaining money under false pretences."

Does or does not this allegation describe or set out a crime? This court is of the opinion that it does not.

The offense colloquially, but inaccurately, known as "obtaining money under false pretences" was unknown to the common law. It is purely a statutory crime created for the first time by an act passed in the reign of George II.

Cheats were punishable at common law it is true, but the cheats punishable at common law are such cheats as are effected by deceitful or illegal symbols or tokens, which may affect the public at large, and against which common pru-

dence could not have guarded. Wharton, Crim. Law, Vol. II, sec. 1116.

Obtaining money on one's own check or note is not such a cheat. Wharton in his valuable work considers this express question, and uses the following language:

"In the case of a person offering to another a cheque on a bank where he has no funds, neither of these ingredients, (to-wit, latency and publicity) exists. The fraud is not so latent as not to call up inquiry, for the very fact of a man offering his own paper is notice putting the person to whom the paper is offered on his guard. The fraud is not addressed to the public at large, but only to the person invited to take the cheque. Hence, passing such a cheque on an individual is not a cheat at common law." Wharton, Crim. Law, Vol. II, sec. 1223.

Again the same writer declares:

"No cheat is indictable at common law unless effected by conspiracy, or unless it be marked by latency, subtlety, and generality of operation, as to affect all likely to come within its range; whereas, under the statutes now before us (covering the obtaining of money or goods by false pretenses) it is made indictable to obtain money or goods from individuals by any designedly false statements of facts likely, under the particular circumstances of the case, to deceive." Wharton, Crim. Law, Vol. II, sec. 1130.

Obtaining money under false pretences not being an offense at common law, such as murder, arson, burglary, forgery, rape or larceny, but being a crime created by statute, it follows that on the face of an affidavit or indictment upon which it is sought to apprehend a fugitive from justice, sufficient must appear to show that the fugitive is charged with the *statutory* crime.

In other words, the indictment or affidavit must disclose all of the essential elements of the statutory offense.

The legislatures of North Carolina, as well as those of Illinois and most of the other states of the union, have, following the precedent of the English statute of 30 Geo. II, c. 24,

enacted laws which declare that the obtaining of money or goods by false pretenses, under certain conditions and circumstances, is a criminal offense. In each and all of these acts there is an express statutory definition of the offense, and in order to constitute the same each and all of the elements of the statutory crime mentioned in the statute must be found in each particular case where the crime is charged, before the person charged therewith can be apprehended on a warrant or indicted.

The words "obtaining money under false pretenses" do not disclose an offense as defined by the North Carolina or Illinois statute. All false pretenses are not illegal, nor is the obtaining of money or goods by illegal false pretenses at all times a crime; as for example, the collection of an honest debt from a debtor by means of false pretenses.

Under most, if not all of the statutes of the several states examined by the court, there are four essentials requisite to the commission of the offense of obtaining money by false pretenses:

1st. False and fraudulent statement of *existing facts*.

2nd. Knowledge of their false and fraudulent character.

3rd.   Intention to deceive and defraud.

4th. Obtaining the money and property of another thereby.

To constitute the crime of obtaining money or goods under false pretenses, there must be a "false and fraudulent representation or statement of an existing or past fact, made with knowledge of its falsity, and with the intent to deceive and defraud," whereby another is induced "to part with money or property of value." Vol. 7, Amer. & Eng. Ency. of Law, 700 (1st ed.).

In *People ex rel. Lawrence v. Brady,* 56 N. Y. 182, 188, an affidavit similar to the recital contained in the governor's warrant in this case, after exhaustive argument, was held insufficient, but one judge dissenting, and the court uses the following language:

"The false pretenses are not set out, nor the means by which the cheat was to have been, or was effected. It was in

the power of the complainant to have specified the pretenses and means used, for he alleges that the object of the conspiracy was accomplished. In an indictment for a cheat at common law the false token must be alleged; and in an indictment for false pretenses the pretenses must be averred, so that the accused may be prepared to meet the accusation, and that the court may see that an indictable offense is charged; for there are many cheats which are not indictable, and false pretenses which are not within the statute. (2 Term Rep. 586; East's Crown Law, 837; *People v. Williams,* 4 Hill, 9; *People v. Crissie,* 4 Denio, 529.) An allegation that one obtained the goods of another by false pretenses, or by cheating, is not, in a legal sense, a charge of crime, for it may be true, and yet no crime may have been committed."

The court is, therefore, of the opinion that the recital in the governor's warrant did not set out or charge, by way of recital or direct averment, the commission of a crime.

Counsel for the defendants, however, have moved this court for leave to supplement their return and file in connection therewith, the affidavit and warrant filed in the office of the secretary of state, upon which the governor of Illinois issued the warrant set up in the return.

This motion has been allowed, as was the same motion granted in the case *In re Romaine,* 23 California, 585.

And there now being on file in this case a copy of the affidavit upon which the North Carolina warrant was issued; and this affidavit setting out in detail, in conformity with the law, the false pretenses upon which the governor of Illinois has issued his warrant, the court is of the opinion that all the requirements antecedent to the issuance of the governor's warrant have been fully complied with, and that the prisoner must therefore be remanded to the defendant Jones, who has been duly appointed the agent of the governor of North Carolina.

As to the third objection made by counsel for the prisoner to the sufficiency of the governor's warrant, to-wit: That it does not appear on the face of the papers that the affidavit

upon which the North Carolina warrant was issued, was made by a duly authorized officer in the course of a judicial proceeding, it suffices to say that the governor's warrant recites that there was produced and laid before him a copy of a warrant and affidavit made by and before a *properly empowered officer in and of the state of North Carolina in accordance with the laws thereof.* This recital is, in the opinion of the court, ample and complete.

The order of this court is, therefore, that the relator be remanded to the custody of the defendant Jones, the agent of the governor of North Carolina; and it is so ordered.