SAMUEL WATSON, Plaintiff in Error, *v.* THE PEOPLE OF THE
STATE OF NEW YORK, Defendant in Error.

A representation to the effect that a horse is sound, kind and true, made by
a vendor, with knowledge that it is untrue, and with intent to cheat
and defraud a purchaser, the falsity not being apparent at the time

and by means whereof the latter is induced to purchase; and to part with "money, personal property or valuable thing," is "a false pretense" within the meaning of the statute (2 R. S. 677, § 53) concerning "cheats ;" and is a criminal offense under said statute.

*People* v. *Williams* (4 Hill, 9), distinguished.

The fact that the vendor gave a written warranty on the sale does not relieve him from the effect of the false pretense.

(Submitted January 16, 1882; decided January 31, 1882.)

ERROR to the General Term of the Supreme Court in the first judicial department, to review judgment entered upon an order made December 23, 1881, which affirmed a judgment of the Court of General Sessions of the city and county of New York, convicting the plaintiff in error of the crime of obtaining money by false pretenses. (Reported below, 26 Hun, 76.)

The indictment charged and the evidence tended to show that the prisoner, with intent to cheat and defraud the complainant, represented that a horse which the latter was negotiating to purchase of him was sound, true and kind, well adapted and fitted to be used in drawing wagons, which representations were known to the prisoner to be false and untrue; that the complainant, relying upon the statement, and nothing appearing at the time of the purchase to show its falsity, purchased the horse, paying $75 in money therefor; that the horse was in fact wind-broken and utterly worthless. The prisoner, on receiving the money, gave a receipt containing a warranty that the horse was kind and true, nothing being said therein as to its soundness.

*William F. Kintzing* for plaintiff in error. The charge against plaintiff in error was a breach of warranty for which an action would lie, but it is not an indictable offense. (*Rex* v. *Pywell*, 1 Stark. N. P. C. 402; *Wheatley's Case*, 2 Burr. 1127; *Pinkney's Case*, East's P. C. 818; *R.* v. *Meno*, 2 Str. 1127; 7 Mod. 815; *R.* v. *Lara*, 6 T. R. 565; *R.* v. *Bower*, Cowper, 323; *Rex* v. *Fowle*, 4 C. & P. 592; *Queen* v. *Kenrick*, 5 Q. B. 49; *Reg.* v. *Keighley*, 7 Cox's Cr. Cas. 217; *Reg.* v. *Bryen*, id. 312; *Reg.* v. *Lee*, 8 id. 233; *Reg.* v. *Levine*, 10 id.

374; *Reg.* v. *Williamson*, 21 L. T. R. [N. S.] 444; *Scott* v. *People*, 62 Barb. 69; *Rex* v. *Coddington*, 1 C. & P. 661.) It is not indictable to assert a false opinion with intent to deceive. (*Reg.* v. *Oates*, 29 L. & E. 552.) Fraudulent warranties in the sale of chattels, while fraud for which an action lies, do not amount to a felony. (*Rex* v. *Bower*, Cowper, 323; *Rex* v. *Wheatley*, 2 Burr. 1129; *Rex* v. *Dunnage*, id. 1130.) The court erred in not directing the acquittal of the accused, the party injured, having at the very time of the purchase, the means of detecting the fraud at hand. (*State* v. *Mills*, 17 Me.; *Comm.* v. *Morse*, 2 Mass. 138; *Comm.* v. *Warren*, 6 id. 72; *People* v. *Stone*, 9 Wend. 182; *People* v. *Gates*, 13 id. 311; *People* v. *Herrick*, id. 87; *People* v. *Johnson*, 12 Johns. 291; *People* v. *Williamson*, 4 Hill, 9; *People* v. *Thomas*, 3 id. 169; *Goodhall's Case*, R. & M. C. C. 461; Roscoe's Cr. Ev. 362; *Comm.* v. *Hutchinson*, 2 Penn. L. J. 243; *Comm.* v. *Hickey*, 3 id. 89; *State* v. *Estes*, 46 Me. 150; *Burrow* v. *State*, 7 Eng. R. [12 Ark.] 65; *State* v. *Godfrey*, 24 Me. 232; *State* v. *Mc-Kenzie*, 42 id. 392; *Vernon* v. *Keys*, 12 East, 731; *State* v. *Mc-Kenzie*, 11 Ark. 595; *Williams* v. *People*, 4 Hill, 12.) The indictment charged no offense known to our law. (2 R. S., § 24, p. 741; *McCord* v. *People*, 46 N. Y. 470; *Ranney* v. *People*, 22 id. 413.)

*John McKeon*, district attorney, for defendant in error. The representation as to the soundness of the horse being false, and made with design to cheat and defraud, was a false pretense and representation within the statute. (*People* v. *Crisse*, 4 Den. 525; *State of Maine* v. *Stanley*, 64 Me. 157; *Reg.* v. *Keighley*, 7 Cox's C. C. 217; Wharton's Cr. L. [8th ed.], §§ 1155, 1160; *Skiff* v. *People*, 2 Park. Cr. 139–147; *Thomas* v. *People*, 34 N. Y. 351; *People* v. *Oyer & Terminer*, 83 id. 449; *Rex* v. *Pywell*, 1 Stark. N. P. C. 402; *R.* v. *Munves*, 7 Mod. 315; *R.* v. *Lara*, 6 T. R. 565; *R.* v. *Bower*, Cowper, 323; *Reg.* v. *Keighley*, 7 Cox's C. C. 217; *Queen* v. *Kenrick*, 5 Q. B. 62; *Wheatley's Case*, 2 Burr. 1127.)

MILLER, J. The question in this case is, whether a representation, to the effect that a horse was sound, kind and true, which was false and known to be such and was made with intent to cheat and defraud the purchaser, accompanied by a written warranty, upon which money was obtained, is a criminal offense within the meaning of the statute of this State against false pretenses. That such an offense may be committed when the representation is false, and is made designedly by the prisoner with full knowledge of its falsity, and with an intent to cheat and defraud the party defrauded, we think admits of no serious question. The statute was intended to supply a supposed defect which existed at common law and to make provision for the punishment of offenders who by false representations and ingenious devices sought to procure property or money from others. It is directly aimed against and intended to embrace every offender, who with intent to cheat and defraud another shall designedly, by color of any false token or writing, or by any other false pretense obtain the signature of any person to a written instrument, or any money, personal property or valuable thing. (2 R. S. [Edm. ed.] 697, § 53.) Every species of fraudulent pretenses is included within the comprehensive terms employed, and it matters not what the nature of the transaction is, if money be obtained in the manner and by the means indicated in the statute. So long as there is a false representation designedly made, with the intent to cheat and defraud, it is enough to satisfy the requirement of the law. It is true that it must be a representation which affects and influences the mind of the prosecutor and induces him to sign the instrument, or to part with his money or property, and to surrender it by reason thereof. The question to be determined is, whether the false pretense charged and proven is of such a character that it is capable of defrauding and that the prosecutor could have been deceived by it. In some of the cases decided soon after the enactment of the statute in this State, as well as the English statute which is of a similar import and substantially the same as the first named statute, there was some hesitation as to whether it should not be

interpreted, having in view the restriction which existed at common law in cases of a similar character. But this disposition has yielded to a more just construction so as to give full force and effect to the statute and to furnish protection to those who, from undue confidence in others, or inexperience, are liable to become the victims of dishonest, artful and designing dealers. This interpretation is more consistent with the intention of the law makers and the object in contemplation which was evidently to make a party responsible criminally for any false representation of a material fact designedly made with a fraudulent purpose in view and which did have the effect to cheat and defraud another. This rule has generally been upheld in the decisions in this State with the exception perhaps of *The People* v. *Williams* (4 Hill, 9), which may be regarded as tending in a different direction, although the precise point which now arises was not in that case. The later cases of *The People* v. *Crissie* (4 Denio, 525), *Thomas* v. *The People* (34 N. Y. 351), *People* v. *Sully* (5 Park. 143), affirmed upon appeal to this court, *People* v. *Oyer & Terminer* (83 N. Y. 436), are in a contrary direction. In *The People* v. *Crissie* (*supra*), the indictment alleged that the defendants falsely pretended to a third person that a drove of sheep which were offered for sale were free from disease and foot ail, and that a lameness which was apparent in some of them was owing to an accidental injury, by means of which they obtained a certain sum of money in the sale of the sheep. It was held that this was a false pretense within the statute. This case comes very near in its leading features to the one at bar, and there is in fact no manifest distinction in principle between them, both being, we think, covered by the statute. In *The People* v. *The Oyer & Terminer* (*supra*) it is laid down distinctly, after referring to some of the reported cases in this State, that the pretenses must be calculated to deceive, leaving that to be determined by the jury, and if the pretense was capable of defrauding, it is sufficient. The English decisions fully sustain the doctrine that it is enough that the pretense was made knowingly and the money obtained thereby with the intent to defraud

and that the pretense was false to the knowledge of the person making it. (*Hamilton* v. *The Queen*, 9 Ad. & El. [N. S.] 271, 278; *Reg.* v. *Wickham*, 10 Ad. & El. 34.) The counsel for the prisoner cites numerous cases to support the proposition that the warranty of a horse to be sound is nothing more or less than a warranty as to quality, and that in such a case no offense is made out in violation of the statute. It may be remarked that most of the cases relied upon are under the common law before the passage of the English statute increasing offenses of this description, so as to include within its terms all kinds of false pretenses whether such as are made by means of false tokens, or by false verbal statements made designedly with an intent to obtain money or property and to cheat and defraud.

Before the statute was enacted, and at common law, only such pretenses as were made by means of false tokens, or by a conspiracy to cheat and defraud, or by such acts as affected the public, such as false weights and measures, were the subject of punishment. The statute, which was intended to remedy these defects, created new offenses and extended the law so as to give it a larger field of operation and embrace a different class of cases than what had previously been known and recognized as offenses. This change in the law renders many of the cases cited inapplicable. This distinction is referred to in the opinion of the General Term and some of the leading cases are there considered and commented upon. There is no merit in the position that the prosecutor had at hand, at the time of the purchase, the means of detecting the fraud, and therefore the offense was not within the statute. This point was not distinctly raised by any request to charge, or otherwise, and although, ordinarily, an indictment will not lie for a naked falsehood, yet when all the circumstances evince that the representation was made designedly, with an intent to cheat, and was calculated to deceive and capable of defrauding, the prisoner cannot excuse himself by saying that if you had been sharp, vigilant and astute, you could have detected the fraud. When there is an absolute representation, false and untrue and known to be such, the purchaser of property has a right to rely upon

it. Where a statement is made, as the evidence establishes in the case at bar, that a horse is sound, kind and true, and it is not apparent that it is not, and that immediately afterward it appears that it was utterly worthless, broken down so as to be incapable of being delivered, a representation is made which is capable of defrauding on its face, and the party is no more bound to take out the horse and try him, for the purpose of ascertaining whether the representation is true, than he would be to try any other article of personal property he is about to purchase, which was apparently whole and yet so defective that it might fall to pieces upon being moved. He has a right to rely upon the representation, and common honesty and morality demand that the fraudulent dealers should not screen themselves by the excuse that the party could have detected the fraud if he had not relied on the representation made. Nor does the fact that there was a warranty relieve the prisoner from the effect of the false pretenses under which he obtained the money. It would not exempt the prisoner from the consequence of a false pretense made as to an existing additional material fact, because it was combined with a promise for the future. (*Reg.* v. *West*, 26 L. J. [N. S.], Mag. Cases, 6 ; 31 id. 146.)

The evidence upon the trial showed a case of gross imposition and fraud practiced upon the prosecutor, and an offense within the statute. The court very properly refused to direct the jury to find a verdict of not guilty as requested by the prisoner's counsel, and there was no error upon the trial.

The conviction should be affirmed.

All concur, except ANDREWS, Ch. J., and TRACY, J., dissenting.

Judgment affirmed.