## Court of Appeals.

October 5, 1897.

## PEOPLE v. CHARLES O. PECKENS.

1. CRIMINIAL LAW—PROCUREMENT.

   A person who, by counsel or assistance, procures the commission of the crime is equally responsible as the actor ; and when it is shown that he advised or procured its commission, the fact that he may for some reason, have been incapable of committing it himself, is not controlling, or even material.

2. SAME—EVIDENCE—DECLARATIONS—CONSPIRACY.

   When it is alleged that persons have conspired together to commit an offense, and the proof tends· to establish the existence of the conspiracy, the acts are declarations of each of the conspirators are binding upon, and to be regarded as the acts of, the others. The question of their guilt becomes one of fact to be determined by a jury.

3. SAME—SECTION 29 OF PENAL CODE.

   The effect of the provision in § 29 of the Penal Code is to permit the pleader to allege an act as the act of the defendant when he procures it to be performed by another ; but it nowhere forbids setting out facts showing that the acts of another are, in law, the acts for which a defendant is responsible. The allegation of such facts are equivalent to a charge that the act was that of the defendant.

4. SAME—INDICTMENT—FALSE PRETENSES.

An indictment for obtaining property by false pretenses is sufficient, if it states and negatives one false pretense ; and if proved, the materiality and influence of it is a question for a jury, unless it clearly appears to be immaterial.

5. SAME.

The purpose of the averment of pretenses in the indictments is only to give the defendant notice of what may be proved against him. The mode of obtaining the property may not be pleaded.

6. SAME.

An indictment, which contains no defect that affects any substantial right of the defendant, and gives him full notice of what is to be proved against him, is sufficient.

7. SAME—JURISDICTION.

Where some of the fraudulent acts and pretenses, alleged in the indictment, were made and performed in one, though others were made and performed in another, county, the offense is partly committed in the former county, and the court has jurisdiction in that county.

8. SAME—SETTING OUT DEED.

An indictment for false pretenses, which contains a description of the premises, a statement of the consideration, the name of the grantor, and the value of the deed, sufficiently sets out the deed.

9. SAME—AVERMENT OF VALUE.

An indictment, which charges that the defendant, with force and arms, feloniously obtains and stole the deed mentioned therein, and the title to the land of the complaint, which was of the value of $1,500, clearly asserts the value of the deed.

10. SAME—STATEMENT OF FACT.

The mere expression of an opinion, which is understood to be only an opinion, does not render the person expressing it liable for fraud. But, where the statements are as to value or quality, and are made by a person knowing them to be untrue, with intent to deceive and mislead the one to whom they are made, and he is thus induced to forbear making inquiries which he otherwise would, they may amount to an affirmation of fact, rendering him liable therefor.

11. SAME—OTHER TRANSACTIONS.

On the trial of an indictment for obtaining property by false representations or pretenses, the allegation that they were made with an intent to defraud, may be proved by transactions with other parties, which tend to show a fraudulent scheme to obtain property by devices similar to those practiced upon the complainant, provided the dealings are sufficiently connected in point of time and character to authorize an inference that the transaction was in pursuance of the same general purpose.

**12. SAME.**

Evidence of the commission of one crime is not inadmissible because it tends to prove another crime, if it is otherwise material and relevant.

**13. SAME—CONSPIRACY.**

A conspiracy may be proved by circumstantial evidence; and parties performing disconnected acts, contributing to the same general result may, by the proof of circumstances and their general connection with each other, be satisfactorily shown to be confederates in the commission of an offense.

**14. SAME—DECLARATIONS.**

Where several persons are engaged together in furtherance of a common illegal purpose, the acts and declarations of one confederate, made in pursuance of the original concerted plan and with reference to the common object, are competent evidence against the other conspirators, if they form part of the res gestae and are not narratives of past transactions.

Appeal from a judgment of the appellate division, affirming the judgment convictingdefendant of the crime of larceny in the first degree, and affirming an order denying his motion for a new trial on the minutes of the trial judge.

The appeal also brings up for review the decision of the court disallowing the defendant's demurrer to the indictment. The defendant was indicted for the crime of grand larceny in the first degree, committed in violation of section 528 of the Penal Code. The indictment charged that on or about the 16th of September, 1895, at the city of Rochester, the defendant, Albert P. Wicks, Frank S. Johnston, and others to the jury unknown, entered into a conspiracy to cheat and defraud persons with whom they dealt by obtaining property without consideration, and defrauding vendors of the same, and by fraudulently selling and disposing of worthless mortgages, and cheating and defrauding the purchasers thereof; that on or about that day they connived, conspired, and confederated together to cheat and defraud the complainant, Frances E. Stewart, of her property, and to appropriate the same to their own use, and that in the town of Manchester, in the county of Ontario, they did feloniously, fraudulently, and falsely pretend and represent to her that one of the confederates was acting for her as real estate broker and commission agent in the sale of her property, which consisted of a house and lot of the value of $1,500, situated in the town of Manchester, Ontario county,

and that another of the confederates desired to buy said property, and move to the village of Shortsville to live, and that in pursuance of such conspiracy and felonious, fraudulent, and false pretenses and representations, one of the confederates, under a false name, then and there agreed to purchase the complainant's premises for the sum of $1,900 cash, to be paid upon the delivery of a deed of the premises, with an abstract of title ; that in pursuance of their fraudulent scheme, conspiracy, and confederation two of the confederates pretended and represented to the complainant that it would be necessary for her, or some one in her behalf, to go to the city of Rochester with her deed and abstract of title, to consummate the purchase, and that the cash price of $1,900 would be paid and delivered to her or her representative on the presentation and delivery of the deed and abstract of title; that on the 17th day of October, 1895, at the town of Manchester, the complainant, relying upon the false and fraudulent pretenses and representations so made, and believing the same, made and executed her warranty deed of said lands and premises, and on the 19th day of October, 1895, delivered the deed and abstract of title to her husband, to be taken to Rochester, to be delivered to one of the defendant's confederates upon the payment by him to her husband of the sum of $1,900 in cash ; that in pursuance of the conspiracy and confederation of the defendant and his coconspirators, and of their felonious intention to deprive and defraud the complainant of the deed of her property and of the use and benefit thereof, and to appropriate the same to their own use, the defendant and his confederates feloniously, fraudulently, and falsely pretended and represented to the complainant's husband that the confederate who agreed to purchase the premises had been disappointed in getting his money, but was the owner of a certain mortgage made and executed by Thomas E. Payson and wife to said confederate in an assumed name to secure the sum of $2,000 ; that such mortgage was a first lien on a house and lot in Rochester ; that the house and lot were valuable, and worth more than the amount of the mortgage ; that the mortgage was a good, first-class mortgage of the value of $2,000 ; that the confederate who was the pretended owner of such mortgage was perfectly good and responsible, and would pay the sum of $1,900, and redeem such

mortgage ; that the complainant's husband, then and there believing such false and fraudulent representations and pretenses made by the defendant's confederates, and being deceived thereby, was induced by reason thereof to allow the other confederate, who fraudulently claimed to be acting for the complainant, to take the mortgage, and accept an assignment thereof, and to deliver to the confederate who agreed to purchase the property the abstract of title and the deed executed by the complainant to him of the premises owned by her ; that the defendant and two of his confederates then and there feloniously and fraudulently obtained the abstract of title and the deed of said premises, which were the goods, chattels, and property of the complainant, by cover and aid of the false pretenses and representations aforesaid, and with intent to deprive and defraud the complainant of the same, and the use and benefit thereof, and to appropriate the same to their own use; that the defendant and his confederates executed or procured to be executed a deed of said property to one Reynolds; that the defendant, in pursuance of such conspiracy, caused the deed from the complainant to be recorded in Ontario county, where the lands were situated; that Reynolds made a deed of the property to one Wheeler, and Wheeler executed a mortgage to Reynolds, which transfer and mortgage were made for the fraudulent purpose of covering up the title to such property, and placing the same in the hands of an innocent party ; that, in pursuance of such conspiracy, all of said conveyances were brought by the defendant to the clerk's office of Ontario county, and caused to be recorded therein for that purpose; that in fact the defendant's confederate was not acting for the complainant, but was conniving and confederating with the defendant and his other confederates to cheat and defraud her out of her property ; that the confederate who agreed to purchase said premises, known as Frank J. Stinson, was not Frank J. Stinson, but Frank S. Johnston, and did not intend to purchase the premises, and pay $1,900 or any other sum in cash therefor, as was stated and represented, but was acting, conniving, confederating, and conspiring with the defendant and his other confederates to cheat and defraud the complainant of the property described, and of the use and benefit thereof, and to ap-

propriate the same to their own use; that the said mortgage was not a first lien upon the house and lot described, and was not a first lien upon any lands whatever, was not a first-class mortgage, as was stated and represented, and was not of any value whatever; that the pretenses and representations so made by the defendant and his confederates were in all respects utterly false and untrue; that the defendant and his confederates, and each of them, at the time of making them, knew the same to be false and untrue; and that the defendant, with force and arms, the deed aforesaid and the title to the land and premises of the complainant, which was of the value of $1,500, then and there feloniously did steal and obtain, against the form of the statute in such case made and provided. This indictment was found by a grand jury of the county of Ontario, and sent to the county court of that county for trial. The defendant was arraigned thereon, and filed a demurrer thereto. The grounds of the demurrer were: "First. That the grand jury by which said indictment was found had no legal authority to inquire into the crime charged, by reason of its not being within the local jurisdiction of the said county of Ontario. Second. That the indictment was not conformed substantially to the requirements of sections 275 and 276 of the Code of Criminal Procedure, in that it does not state the acts of the defendant constituting the crime. Third. That more than one crime is charged in the indictment against this defendant, within the meaning of sections 278 and 279 of the Criminal Code, to wit, the crime of conspiracy and the crime of grand larceny. Fourth. That the facts stated do not constitute a crime." The demurrer was argued before the county court, and disallowed. The case subsequently came on for trial before that court, when the defendant was found guilty of the offense charged, and sentenced to imprisonment in the state prison for the term of eight years.

George Raines, for appellant.

Royal R. Scott, for the people.

MARTIN, J.—The appellant's first claim is that the offense charged in the indictment was not properly tried, or properly triable, in the county of Ontario, because no criminal pretense or

act of the defendant which formed a part of the crime was charged to have been made or committed within that county. The indictment charged that the defendant, two other persons named, and others whose names were unknown, entered into a general conspiracy for the commission of crimes of the character of that alleged to have been committed by the defendant; that subsequently, in the county of Ontario, and in pursuance of such conspiracy, two of the defendant's confederates, with intent to cheat and defraud the prosecutrix, made to her certain material representations and pretenses, which were knowingly false and fraudulent, were relied upon by her, and by which she was induced to make her deed of certain real estate owned by her to be delivered to one of the defendant's confederates upon the payment in cash of the consideration named; that when the deed was made and presented, the defendant and his confederates, in the county of Monroe, made other false and fraudulent representations and pretenses, which were relied upon by the complainant's agent, to whom she had intrusted her deed, whereby they induced him to deliver it without payment of the purchase price, and to accept the assignment of a fraudulent and worthless mortgage in place thereof; that they thereupon transferred and procured the property described in such deed to be transferred and mortgaged to and by several of the defendant's confederates and others, so as to place the title in the hands of innocent purchasers, and beyond the reach of the complainant; that the defendant caused such mortgages and conveyances to be recorded in Ontario county, where the property was situated; and that by such false and fraudulent pretenses and representations the defendant stole and obtained the said deed and title, which was of the value of $1,500.

In considering whether the indictment was sufficient to justify the court in trying the action in the county of Ontario, it must be admitted that the only direct act charged to have been committed in that county by the defendant personally was the delivery to the clerk of that county of certain conveyances, which were procured by the false pretenses of his confederates, and procuring them to be recorded. The indictment, however, expressly charged that, anterior to any of the fraudulent acts, pretenses, or representations made or performed by the defendant or his con-

federates in that county, they had conspired together for the general purpose of cheating and defrauding the complainant and others of their property by means of fraudulent dealings in real estate and real-estate mortgages, and to carry into execution general fraudulent schemes in all essential particulars like that charged in the indictment. Thus it was alleged in plain and explicit terms that the defendant's confederates made false and fraudulent representations and pretenses in Ontario county, which were material, and constituted a part of the plan or scheme which led up to and formed an element of the crime charged in the indictment. It is expressly provided by statute that a person who advises or procures the commission of a crime may be indicted and convicted thereof, although he was absent when it was committed. Pen. Code, § 29. Indeed, such was the law as it previously existed; the general rule being that what one does or procures to be done through the agency of another is to be regarded as done by him. People v. Bliven, 112 N. Y. 79, 19 N. E. 638. A person who, by counsel or assistance, procures the commission of a crime, is equally as responsible as the actor; and that he may, for some reason, have been incapable of committing it himself, is not controlling, or even material, where it is shown that he advised or procured its commission. When it is alleged that persons have conspired together to commit an offense, and the proof tends to establish the existence of the conspiracy, the acts and declarations of each of the conspirators are binding upon, and to be regarded as the acts of, the others; and the question of their guilt becomes one of fact to be determined by a jury. People v. McKane, 143 N. Y. 455, 38 N. E. 950. Thus the allegations of the indictment were plainly to the effect that in Ontario county the defendant, by and through his confederates, made false and fraudulent representations and pretenses which constituted an essential part of the crime charged.

But it is said that section 29 provides tha when the offense is committed through the agency of another it may be charged as having been committed by the defendant, and, as it was not so charged, the indictment was insufficient. It is true that section declares that it is not necessary to set out in the indictment all the facts which show that the crime was committed through the

agency of another, but it nowhere forbids setting out facts showing that the acts of another are, in law, acts for which a defendant is responsible. The obvious intent of that section was to simplify the form of pleading in such a case, but manifestly it was not intended to prohibit the pleader from alleging the facts. That provision is permissive, not mandatory. Moreover, section 275 of the Code of Criminal Procedure expressly provides that an indictment must contain a plain and concise statement of the act constituting the crime, and, as a general rule, the indictment must charge the crime, and the acts constituting it. People v. Dumar, 106 N. Y. 502, 13 N. E. 325. The only effect of that provision in section 29 is to permit the pleader to allege an act as the act of a defendant when he procures it to be performed by another. That the indictment in this case charged all the facts, instead of alleging a conclusion, constituted no sufficient objection to its validity. The defendant, being fully apprised of the particular acts for which he was to be held responsible, had no just reason to complain. While it is not necessary to allege the facts showing that the crime was committed through the agency of another, yet it is plainly to be implied from the language of that section that they may be alleged, and, when charged, are equivalent to an allegation that the act was that of the defendant.

The indictment in this case was somewhat informally and inartificially drawn. It may be that under the strict and technical rules of the common law as it previously existed a question might have arisen as to its sufficiency, but we think there is none under the more liberal and reasonable rules established by our statutes. Chapter 2 of title 5 of the Code of Criminal Procedure contains the following general provisions as to the form of an indictment: "All the forms of pleading in criminal actions, heretofore existing, are abolished ; and hereafter, the forms of pleading, and the rules by which the sufficiency of pleadings is to be determined, are those prescribed by this Code." Section 273. "The indictment is sufficient if it can be understood therefrom  *  *  *  (7) that the act or omission, charged as the crime, is stated with such a degree of certainty as to enable the court to pronounce judgment, upon a conviction, according to the right of the case." Section 284. "No indictment is insufficient, nor can the trial, judgment,

or other proceedings thereon be affected, by reason of an imperfection in matter of form, which does not tend to the prejudice of the substantial rights of the defendant, upon the merits." Section 285. "Neither presumptions of law, nor matters of which judicial notice is taken, need be stated in an indictment." Section 286. "After hearing the appeal, the court must give judgment, without regard to technical errors or defects or to exceptions which do not affect the substantial rights of the parties." Section 542. "Neither a departure from the form or mode prescribed by this Code, in respect to any pleadings or proceedings, nor an error or mistake therein, renders it invalid, unless it have actually prejudiced the defendant, or tend to his prejudice, in respect to a substantial right." Section 684. An indictment for obtaining property by false pretenses is sufficient if it states and negatives one false pretense, and, if proved, the materiality and influence of it is a question for a jury, unless it clearly appears to be immaterial. If it is capable of defrauding by inducing credit or the transfer of property, or of inspiring confidence, that is enough. The purpose of the averment of pretenses in the indictment is only to give the defendant notice of what may be proved against him, and the mode of obtaining the property need not be pleaded. Thomas v. People, 34 N. Y. 351; Smith v. People, 47 N. Y. 303; People v. Court of Oyer and Terminer, 83 N. Y. 436, 449; Watson v. People, 87 N. Y. 561, 564. Tested by these principles, it is obvious that the indictment was sufficient, as there was no defect which affected any substantial right of the defendant, and it gave him full notice of what was to be proved against him.

This brings us to the consideration of the question whether, assuming the liability of the defendant for the acts of his confederates, and that they were properly pleaded, the allegations in the indictment were sufficient to justify the trial of the defendant in Ontario county. "When a crime is committed, partly in one county and partly in another, or the acts or effects thereof, constituting or requisite to the consummation of the offense, occur in two or more counties, the jurisdiction is in either county." Code Cr. Pro. § 134. If this crime was committed partly in Ontario county, it is clear that by virtue of that statute the court had jurisdiction, and properly declined to dismiss the indictment, or

direct the jury to acquit. The appellant was indicted for having deprived the complainant of the deed and title to her property, situate in Ontario county, by color or aid of fraudulent or false representations and pretenses. It is quite manifest that the allegations in the indictment sufficiently charge that the crime was committed partly in Ontario county and partly in the county of Monroe. The acts and fraudulent representations which induced the prosecutrix to make a deed of her property and obtain an abstract of her title, to send them to the county of Monroe, to be delivered to one of the defendant's confederates, were all alleged and proved to have been made and to have transpired in Ontario county. It is apparent that what occurred in that county constituted a step in, and led up to the consummation of, the crime charged. But for the acts and representations made and performed there, no crime would have been committed. If one of the confederates had not, when acting as a co-conspirator with the defendant in attempting to deprive her of her property by fraud, falsely represented and pretended to the prosecutrix that he was acting for her, in her interest, and as her agent, in selling her property, no real or pretended sale would have been effected, and the deed would not have existed which was the subject of the crime charged. But for what transpired in that county, no second step would have been taken towards the commission of the offense. Again, it was consummated there by recording the conveyances fraudulently made and procured by the defendant and his confederates. It was in that county that one of the confederates was presented to the complainant, under a false name, as a prospective purchaser of her property, and she was there induced by their fraudulent acts and pretenses to enter into an agreement for its sale to him. Consequently, as at least some of the fraudulent acts and pretenses were made and performed in that county, it is clear that the offense was partly committed there, and the court had jurisdiction. People v. Dimick, 107 N. Y. 13, 14 N. E. 178; People v. Crotty (Sup.) 9 N. Y. Supp. 937; Mack v. People, 82 N. Y. 235. We think the indictment sufficiently charged the defendant with the representations, pretenses, and acts made and performed by his confederates in the county of Ontario, and with the offense for which he was tried.

It is also insisted that the defendant should have been discharged because there was a failure to prove any material representation by him which was charged and negatived in the indictment. It was charged therein that one of the defendant's confederates fraudulently represented to the complainant that he was acting for her as her agent in the sale of her property, whereas he was not acting for her, but was a confederate of, and conspired with, the defendant and others, to cheat and defraud her. The representations that the proposed purchaser of her property was a man by the name of Stinson, who wished to purchase it for his own occupancy, and desired to move to the village where it was located, and engage in business there, and would pay her $1,900 in cash therefor, were charged, negatived, and proved to be knowingly false. The representations that the mortgage which the defendant and his confederates induced the prosecutrix's husband to accept instead of cash was a first lien, as well as a firs-class mortgage, were alleged, negatived, and proved to have been fraudulent. Other representations and pretenses were alleged, negatived, and proved to be false and fraudulent. The defendant's argument that there was a failure to prove the false representations and pretenses alleged is based principally upon the theory that he was responsible only for such acts as were performed by him individually, and not for the fraudulent acts and pretenses of his confederates. The incorrectness of that position has already been shown, as the defendant, both by statute and at common law, was liable for their fraudulent acts.

Another claim of the defendant is that the indictment was defective in failing to set out the deed which was the subject of the offense, and that its contents were insufficiently alleged. The indictment contained a description of the property included in the deed ; a statement that one of the defendant's confederates agreed to purchase it, and pay therefor $1,900 ; that the complainant made and executed her warranty deed of the premises to the confederate named, and that it was delivered to him. Thus the indictment contained a description of the premises, a statement of the consideration, the name of the grantor, the name of the grantee, and the value of the deed. Under the liberal rules which now exist in relation to pleadings and proceedings in

criminal actions, to which we have adverted, we think the indictment was sufficient in that respect.

The appellant's contention that the value of the deed was insufficiently alleged cannot be upheld. It is charged in the indictment that the defendant, with force and arms, feloniously obtained and stole the deed mentioned therein, and the title to the land of the complainant, which was of the value of $1,500. We think a fair construction of the language employed imported a charge that the deed was of that value. If, however, its effect was to charge the value of the land described therein, then, under the provisions of section 545 of the Penal Code, that was to be deemed the value of the deed. We think the allegation in the indictment amounts to a clear assertion of the value of the deed, that it must have been so understood by the defendant, and that it was sufficient.

If the foregoing conclusions are correct, it disposes of the questions as to the sufficiency of the indictment, and the jurisdiction of the court to indict and try the defendant in Ontario county, which were raised by the defendant's demurrer, his motion to dismiss, or otherwise.

It is insisted that many of the representations to the complainant and her husband 'which induced the making and delivery of her deed were expressions of opinion, and although false, and known to be so, no liability resulted. As a general rule, the mere expression of an opinion, which is understood to be only an opinion, does not render a person expressing it liable for fraud. But where the statements are as to value or quality, and are made by a person knowing them to be untrue, with an intent to deceive and mislead the one to whom they are made, and he is thus induced to forbear making inquiries which he otherwise would, they may amount to an affirmation of fact rendering him liable therefor. In such a case, whether a representation is an expression of an opinion or an affirmation of a fact is a question for the jury. The rule that no one is liable for an expression of an opinion is applicable only when the opinion stands by itself as a distinct thing. If it is given in bad faith, with knowledge of its untruthfulness, to defraud others, the person making it is liable, especially when it is as to a fact affecting quality or value,

and is peculiarly within the knowledge of the person making it. Watson v. People, 87 N. Y. 561 ; Simar v. Canaday, 53 id. 298 ; Hickey v. Morrell, 102 id. 454, 463, 7 N. E. 321; Schumaker v. Mather, 133 N. Y. 590, 595, 30 N. E. 755. The proof in this case seems to bring it clearly within the doctrine of the cases cited. The statements and representations made by the defendant and his confederates were more than expressions of an opinion. They consisted of positive assertions of existing conditions or facts, which were known by them to be false, and were made with an intent to influence the action of the complainant and her agent, and to induce them to refrain from any investigation of the sub-ject to which they related. As they were false, known by the persons making them to be false, were intended to deceive and defraud the complainant by inducing her to rely upon them with-out investigation as to their truthfulness, they were, under the principle of the authorities referred to, to be regarded as affirma-tions of fact for which they were liable.

On the trial the court permitted the prosecution to prove trans-actions of the defendant and his confederates with other persons, which, while they were not in all respects identical with that for which the defendant was tried, still they were quite similar in all their essential particulars. To the admission of this evidence the defendant objected, upon the ground that it was immaterial, in-competent, and irrelevant. The objection was overruled, and the defendant excepted. There were numerous rulings of this char-acter which present the question whether evidence of other similar transactions was admissible either to show the intent of the de-fendant or as circumstances tending to establish a conspiracy be-tween the defendant and his confederates. On the trial of an indictment for obtaining property by false representations or pre-tenses, the allegation that they were made with an intent to de-frsud may be proved by transactions with other parties which tend to show a fraudulent scheme to obtain property by devises similar to those practiced upon the complainant, provided the dealings are sufficiently connected in point of time and character to author-ize an inference that the transaction was in pursuance of the same general purpose. Such representations may be proved, although no property was obtained, where the evidence tends to show that

at the time the defendant was engaged in a fraudulent transaction. While this testimony is not admissible upon the question whether the alleged representations were made, it is admissible as tending to show a motive to obtain the property in pursuance of a general fraudulent scheme. Mayer v. People, 80 N. Y. 364; Shipply v. People, 86 id. 375; People v. Everhardt, 104 id. 591, 11 N. E. 62; People v. Dimick, 107 N. Y. 13, 31, 14 N. E. 178. Therefore it is quite obvious that the evidence offered by the prosecution was admissible, unless the transactions were so remote as not to justify an inference that they took place in pursuance of a general plan or scheme to defraud, under which the representations set out in the indictment were made. It is impossible, within the limits to which this opinion should be confined, to examine each of those transactions in detail. It is sufficient to say that, after an examination of the evidence bearing upon them, and considering the circumstances established by the proof, we think the exceptions of the defendant to the reception of that evidence were not well taken, but that it was admissible to establish the motive and intent of the defendant and his confederates.

We are also of the opinion that the evidence was sufficient to justify the jury in finding the existence of a general conspiracy between the defendant and his confederates, as alleged in the indictment. A conspiracy may be proved by circumstantial evidence; and parties performing disconnected acts, contributing to the same general result, may, by the proof of circumstances, and their general connection with each other, be satisfactorily shown to be confederators in the commission of an offense. Kelley v. People, 55 N. Y. 565; People v. McKane, 143 id. 455, 38 N E. 950. Considering the relations which existed between the various parties who were actors in the commission of this crime, the circumstances proved, and the various acts of the defendant and his alleged conspirators in this and other transactions of which proof was given, it becomes manifest, we think, that the jury was justified in finding that they had conspired together for the commission of this and other similar offenses, and that the verdict of the jury was abundantly sustained by the evidence.

The contention of the appellant that the evidence of other trans-

actions by the defendant and his confederates was inadmissible, because it tended to prove that they were guilty of other cri.- s, cannot be sustained. It is well settled by the decisions of this court that, while evidence of the commission of one crime is not admissible to establish a party's guilt of another, yet it is not inadmissible because it tends to prove another crime if it is otherwise material and relevant. That such evidence is admissible where it purpose is to show intent or guilty knowledge, or where the transaction proved had some relation to or connection with the transaction upon which the indictment was based, or where it formed a link in the chain of circumstances or facts which led up to the transaction involved, we think there can be no doubt under the authorities as they exist in this state. People v. McLaughlin, 150 N. Y. 386, 44 N. E. 1017. This case clearly falls within the exceptions to the general rule, and, as the evidence was relevant to the issue, it was not inadmissible simply because it tended to prove the defendant and his confederates guilty of other crimes.

Another ground upon which the appellant urges that the judgment should be reversed is that " the court erred in admitting the testimony of George H. Harris under various exceptions, because the evidence was that of an alleged confederate, a week after the. alleged crime and conspiracy had been completed, and was prejudicial to the defendant." It is manifest from the brief of the learned counsel that the evidence of the witness is regarded by him as proof of admissions by a confederate, made after the crime was committed and the conspiracy ended ; in other words, that it was a mere narrative of past transactions. In this, we think, he is in error. The evidence was not of declarations made by a conspirator relating to the past, but was proof of a constituent element of the transaction for which the defendant was indicted. The evidence of the witness was as to an actual transaction which took place between himself, as the representative of the complainant, and one of the defendant's confederates, in regard to the complainant's property, during the existence of the conspiracy. The rule that, where several persons are engaged together in the furtherance of a common illegal design, the acts and declarations of one confederate, made in pursuance of the original concerted plan,

and with reference to the common object, are competent evidence against the others, though made in their absence, is a familiar one, and well established by the authorities in this state. It is true that under that rule the evidence is confined to that which the rule of res gestæ admits, and excludes narratives of past transactions. Apthorp v. Comstock, 2 Paige, 487 ; People v. Kief, 126 N. Y. 661, 27 N. E. 556. But that principle has no application here, as the evidence tended to show that the conspiracy between the defendant and his confederates still continued, and that the act of the latter, which was proved, was a part of the general plan and scheme of the conspirators. The evidence was a part of the res gestæ, and was clearly admissible.

There were other exceptions taken by the appellant, which have been examined by us, but we have found none that requires further discussion, or that would justify an interference with the judgment. The importance of this case, involving, as it does, the liberty of a citizen on the one hand and the protection of the innocent and unwary upon the other, has led us to a diligent study of the case and question so ably discussed by counsel for the respective parties. After a careful examination of all these questions, we are clearly of the opinion that none of them presents reversible error. We think the indictment was sufficient, that the court has jurisdiction, that the evidence was abundant to justify the verdict, and that the judgment should be affirmed. Judgment, interlocutory judgment, and orders affirmed ; judgment affirming them to be entered, certified, and remitted, pursuant to sections 547 and 548 of Code of Criminal Procedure.

All concur, except GRAY, J., absent.

Judgments and orders affirmed.