(66 App. Div. 187.)

## PEOPLE v. WHEELER.

(Supreme Court, Appellate Division, Fourth Department. November 12, 1901.)

1. LARCENY—INDICTMENT—VIOLATION OF COMMON-LAW RULES.

Under Code Cr. Proc. §§ 273, 275, 284, subd. 7, and Id. §§ 285, 684, providing in general that an indictment shall contain a plain and concise statement of the act constituting the crime, and that it shall not be deemed insufficient by reason of an imperfection in matter of form which does not prejudice the substantial rights of the defendant, an indictment for grand larceny, from which a knowledge of the crime charged could be obtained by a casual reading, and which charged all the essential elements of the crime, is not insufficient, though it may have violated some of the rules of the common law as to form.

2. SAME—EXPENDITURE OF MONEY UNDER FALSE REPRESENTATIONS.

On a prosecution for larceny, it was shown that the defendant had falsely represented to the complaining witness, through an agent, that such agent was the owner of lots adjoining the residence of the complaining witness, and that he intended erecting thereon a soap factory; and thereby the witness was induced to purchase the lots, to prevent the erection of such building thereon. The agent acquired title to the property after having made such representations, and executed a deed to witness, and defendant received the purchase price paid. *Held*, that an instruction that, if the agent had title to the property at the time he received the money therefor, defendant was not guilty, was properly refused, since the representations inducing the complaining witness to purchase property which he did not want were false, and constituted the gist of the prosecution.

3. APPEAL—AFFIRMANCE WITHOUT CONSIDERATION.

An order which was appealed from will be affirmed without consideration, where the error relied on was not mentioned by counsel in his oral argument or in his brief.

Appeal from Monroe county court.

Wesley Wheeler was convicted of grand larceny in the first degree, and from a judgment and conviction entered in Monroe county February 5, 1898, upon a verdict of guilty after a trial in the county court of that county, from an order of said court denying the defendant's

motion for inspection of the minutes of the grand jury for the purpose of a motion to set aside the indictment herein, from the order of
said court disallowing the defendant's demurrer to said indictment,
and from the order denying the defendant's motion for a new trial,
he appeals.    Affirmed.

The defendant was indicted by the grand jury of Monroe county on the
28th day of April, 1897, for the crime of grand larceny in the first degree,
committed in violation of section 528 of the Penal Code.   The indictment
charged that the defendant and Philo W. Reynolds, together with Albert P.
Wicks, James A. Harris, and divers other persons to the grand jury unknown,
did at the city of Rochester, in the county of Monroe, on or about the 1st
day of November, 1894, conspire, confederate, and agree together for the
purpose of obtaining money and other valuable property from one Giles F.
Kitts without consideration of value, and did, in pursuance of said conspiracy, confederation, and agreement, cause a deed to be made from one
Edith L. Johnston to one James A. Harris of certain premises situate on the
west side of Hague street, in said city of Rochester, known and described as
lots six, seven, eight, and nine.   The premises herein referred to, together
with the deed in question, are set forth at length in the indictment; and it
further charged that such deed was made without the knowledge or consent
of Edith L. Johnston, and for the purpose of placing the record title of the
property therein described in James A. Harris,—he then and there having
no interest in the same,—to enable him to represent that he was the owner
thereof, and to clothe him with the apparent authority and power over such
property, that he might act in relation thereto as if he were the owner, and
to sell the same, and that in furtherance of such conspiracy the parties
named in the indictment obtained certain plans and papers, and did falsely
represent to Giles F. Kitts that such plans and papers had reference to the
construction of a soap factory upon the property in question, which had
theretofore been purchased of him at the instance of the defendant, and
which was contiguous to his residence, and did represent that such soap factory, when constructed, would be malodorous and a nuisance to the community, and render the adjacent property of Kitts of less value; that in
pursuance of such conspiracy, confederation, and agreement, the parties
named, with others, did enter upon the premises described in the deed, and
did falsely pretend and represent that they were then and there about to
commence the construction of such soap factory; that pursuant to such conspiracy the parties did then and there falsely state, represent, and say that
James A. Harris was the owner of the property described in the deed hereinbefore mentioned, and in furtherance of such conspiracy they did also then
and there send one of their number, to wit, Albert P. Wicks, to Giles F.
Kitts, to falsely represent, pretend, and say to him that he (Wicks) was not
one of the persons so conspiring together, but that he was a friend of Kitts,
and, in order to induce him to purchase such property of James A. Harris,
that he (Albert P. Wicks) could and would be able to purchase such property,
and to pretend and say to Giles F. Kitts that a building was to be constructed upon such property, to wit, a soap factory, which would be a nuisance, and would be vile and malodorous, and ruin his property, and that
Albert P. Wicks, in pursuance of such conspiracy, did then and there go to
Giles F. Kitts, and did represent to him that he was his friend, and did
pretend that he was not one of the persons conspiring as aforesaid, and
that he could obtain of James A. Harris the title of said four lots, and
thereby avoid the construction of a soap factory thereon, and did urge Kitts
to purchase such property of Harris, all of which representations, statements, and pretenses on the part of the parties named in the indictment
were false and untrue, and so known to the defendant Wheeler, and also to
Philo W. Reynolds, James A. Harris, and Albert P. Wicks, and known by
them, and each of them, at the time they were made as aforesaid, to be false
and untrue; that the same were then and there so falsely made by them
in pursuance of such conspiracy for the purpose of inducing Giles F. Kitts
to part with his money and property, and to purchase the premises de-

scribed in the deed hereinbefore referred to, and that such false pretenses, statements, representations, and acts were made with the intent to deprive and defraud Giles F. Kitts of his property, and of the use and benefit thereof, and to appropriate the same to the use of themselves and of some other person; and that Giles F. Kitts, relying upon such false representations, statements, acts, and pretenses made as aforesaid, and not otherwise, did on the 17th day of November, 1894, "in said city, deliver to the said James A. Harris the sum of eight hundred dollars in money, good and lawful money of the United States and this state, being in bank bills, bank notes, checks, and drafts, United States treasury notes and certificates, gold and silver certificates, gold, silver, nickel, and copper coins, a more particular description thereof being to this grand jury unknown, and cannot, therefore, be more particularly given, but of the value of eight hundred dollars." And such grand jury did further say that in truth and in fact James A. Harris was not the true and actual owner of the property described in such deed, but that such deed was made and executed to him for the purpose hereinbefore described, and that the paper title to the real property described therein was taken by him at the instance and request of the defendant Wesley Wheeler; that in truth and in fact it never was the intention or purpose of the parties, or either of them, to construct a soap factory upon the premises described in such deed, but that the same was done for the purpose of making Giles F. Kitts believe that such was to be the fact, as hereinbefore in such indictment alleged; and such grand jury did further charge that Albert P. Wicks was one of the conspirators, and that the representations, words, acts, and pretenses said and done by him were said and done by him at the instance and request of the defendant Wesley Wheeler and of the said Philo W. Reynolds; and that the words, pretenses, and statements of James A. Harris were also done and spoken at the instance and request of the defendant Wesley Wheeler and of Philo W. Reynolds. Wherefore the grand jury by their indictment did accuse "the said Wesley Wheeler and Philo W. Reynolds, that they designedly, and with intent to deprive and defraud the said Giles F. Kitts of his said money and personal property in the manner and form and by the false pretenses, representations, and statements aforesaid, did feloniously steal and obtain from the said Giles F. Kitts the said sum of eight hundred dollars, contrary to the form of the statute in such case made and provided, and against the people of the state of New York and their dignity." In due course of time the defendant Wheeler was arraigned upon this indictment and filed a demurrer thereto, the grounds of such demurrer being (1) that the indictment did not conform substantially to the requirements of sections 275 and 276 of the Code of Criminal Procedure; (2) that the facts stated do not constitute a crime; and (3) that the indictment contained matter which, if true, constituted a legal justification or excuse for the acts charged. This demurrer was disallowed by the county court of Monroe county, and the case subsequently came on for trial before that court, when the defendant was found guilty of the offense charged, and sentenced to imprisonment in the state prison for the term of eight years. A certificate of reasonable doubt was thereafter granted by the trial judge, and the case comes into this court by appeal from the judgment and conviction of the county court, as well as from the several orders made herein; the defendant in the meantime having been admitted to bail.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

George Raines, for appellant.

Stephen J. Warren, Dist. Atty., for the People.

ADAMS, P. J. The learned counsel for the appellant in his elaborate brief and argument directs attention to certain alleged defects in the indictment upon which the defendant was tried, and insists that by reason of the serious nature of such defects the demurrer to the

indictment should have been allowed. These defects are, in substance: (1) That the indictment does not charge that the representations that Harris was the owner of the Hague street lots were made or communicated to the complainant, Kitts; (2) that the representation of ownership in Harris was not negatived in the indictment by pleading a title in any other person, or by the statement of any facts impeaching the title of Harris; (3) that, inasmuch as it is stated in the indictment that a deed was made to Harris to give him "a paper title or a record title to enable him to sell," this fact alleged upon the face of the indictment could not be contradicted in it, and, if the statement that he was not "the true and actual owner" is a contradiction, it is repugnant to and destroyed the principal allegation of the indictment; (4) that the indictment being based upon the charge of a representation of ownership in Harris, and a reliance upon such representation by Kitts, it should have been followed by an allegation of a purchase from or a deed by Harris, or an agreement to deed, and a failure of title, by which the false representations could be made effectual in the attempt to defraud; (5) that the indictment contains no denial that Harris could and did give title, save that it alleges that Harris was not "the true and actual owner"; and (6) that the indictment does not allege that the defendant obtained or received the money stolen, either from Kitts or Harris, to whom Kitts paid it, and omits to charge that Harris was in any way the agent of the defendant in receiving the money, or that the defendant directed Harris to receive it. These several grounds of demurrer are supported by an extended discussion, which we do not deem it necessary to analyze, inasmuch as all of the defects specifically pointed out are equally subject to existing rules prescribing what an indictment shall contain, and how its allegations shall be stated. Under our present system of criminal practice, all hitherto existing forms of pleading in criminal actions are expressly abolished, and the forms as well as the rules by which the sufficiency of such pleadings is to be determined are those prescribed by the Code (Code Cr. Proc. § 273). Section 275 provides that "the indictment shall contain a plain and concise statement of the act constituting the crime, without unnecessary repetition"; subdivision 7 of section 284 declares that "the indictment is sufficient if it can be understood therefrom that the act or omission, charged as a crime, is stated with such a degree of certainty as to enable the court to pronounce judgment, upon a conviction, according to the right of the case"; section 285 provides that "no indictment is insufficient, nor can the trial, judgment, or other proceedings thereon be affected, by reason of an imperfection in matter of form, which does not tend to the prejudice of the substantial rights of the defendant, upon the merits"; while section 684, which is even more comprehensive than any of the sections heretofore cited, declares that "neither a departure from the form or mode prescribed by this Code, in respect to any pleadings or proceedings, nor an error or mistake therein, renders it invalid, unless it have actually prejudiced the defendant, or tend to his prejudice, in respect to a substantial right." It is quite likely that, under the stringent and technical rules of the common

law which existed prior to the adoption of the Code of Criminal Procedure, some of the counsel's criticisms of the indictment in this case would have possessed much force; but, when tested by the more liberal system of pleading which now obtains, they do not seem to require much consideration, for they all relate to imperfections of form or mode of expression, which to no appreciable extent tend to the prejudice of the substantial rights of the defendant upon the merits. It is plainly to be·seen, by even a mere casual reading of the indictment, with what crime the defendant stands charged, and substantially all the essential elements of that crime are set forth with sufficient clearness to apprise him of the proofs which he must be prepared to meet upon the trial. Perhaps the sixth ground of demurrer affords as fair an example as any of the character of the defendant's criticism, and of the importance which should be attached to it, in view of existing rules. It is there said that the indictment is bad because it does not allege that the defendant obtained or received the stolen money either from Kitts or from Harris, and because it fails to charge that Harris was in any way the agent of the defendant in receiving such money. Now, literally that is true; but it will be observed that after setting forth the ·stealing of the $800, and the manner in which such stealing was accomplished by Harris, the indictment concludes with this allegation, viz.: "That the words, pretenses, statements, of the said James A. Harris were done and spoken at the instance and request of the said Wesley Wheeler." And this, we think, is equivalent to saying that in all that was done, including the receiving of the stolen money, Harris acted as the agent of the defendant. Indeed, it would be difficult, if not impossible, to give to the language of the indictment, as a whole, any other construction. But, without dwelling at greater length upon this branch of the defendant's case, it is sufficient to say that the view which we have here expressed as to the liberal construction which should be given to pleadings in criminal actions is but a reflex of that which has been repeatedly asserted by the court of appeals since the present system of procedure was established. People v. Peckens, 153 N. Y. 576, 47 N. E. 883; People v. Helmer, 154 N. Y. 600, 49 N. E. 249; People v. Willis, 158 N. Y. 396, 53 N. E. 29; People v. Lammerts, 164 N. Y. 137, 58 N. E. 22. We therefore pass on to the consideration of the question raised by the counsel's second point, and the one upon which, as he frankly admits, he bases his main reliance for a reversal of the judgment. As introductory, however, to the consideration of that question, it is important that some of the facts of the case as established by the verdict of the jury should be adverted to.

It seems that the defendant owned a double house and lot situate upon Leopold street, in the city of Rochester, which he desired to dispose of; and to that end he directed Albert P. Wicks, whom the indictment charges with being a co-conspirator of the defendant, to look up some property, and he (the defendant) would fix up some deals, and show him how to trade. In pursuance of these instructions, Wicks saw the complainant, Kitts, and learned from him that he would sell his Hague street lots for $2,800, and that if he

could obtain $500 in cash he would accept a mortgage for the balance. These facts were communicated by Wicks to Wheeler, whereupon the latter declared: "We will put up a three-cornered deal. I will show you a three-cornered deal." And, upon Wicks saying that he never saw such a deal, Wheeler replied: "I will show you one this time." It appears that the title to the Leopold street property was in one Edith L. Johnston, who figures quite conspicuously in the defendant's real estate transactions; and, in order to induce Kitts to make some sort of a trade for that property, Wheeler called to his assistance Ella H. Clements, who presumably is one of the "divers other persons" referred to in the indictment, and directed her to dress herself in such manner that she would "look nice and act like a wealthy woman," and, to that end, to wear some diamonds which were furnished by him, and then to represent to Kitts, with a view to negotiating a trade with him, that she wished to purchase this Leopold street property for $6,000, and that she would be able to pay for it as soon as she could realize upon a mortgage of $3,200 which she held. Capt. Kitts protested that he simply wished to sell his four lots, and that he did not desire to purchase the Leopold street property, but his objections were overcome, and the defendant caused a deed thereof to be made from Mrs. Johnston to Kitts, and from Kitts to Ella H. Clements. In the latter deed Kitts assumed two mortgages upon the property, of $1,500 each, the second one being held by Wheeler's wife; Mrs. Clements giving back a third mortgage of $2,500 upon the same property. The defendant also had prepared two deeds of the Hague street lots from Kitts to Edith L. Johnston, one of which contained restrictions requiring the purchaser to use the lots for residential purposes only, and the other containing no restrictions whatever. These papers were given to Wicks with instructions by Wheeler, as the former testified, to show Kitts the deed containing the restrictions, and, before proceeding to execute the same, to substitute the deed without restrictions, all of which was done, and Kitts actually signed the deed containing no restrictions. At this point James A. Harris becomes an important factor in the scheme, and in all subsequent proceedings relating thereto. In obedience to instructions from the defendant, he appeared upon the Hague street property one morning with a squad of men, proclaiming himself to be the owner of the lots, and declaring his intention of laying out and erecting a soap factory thereon. Inasmuch as Kitts was the owner of a handsome residence located in front of these lots, and had, as he believed, protected himself from any such nuisance by a restrictive clause in his deed, he naturally resented the intrusion upon his supposed rights, and protested that the soap factory should not be built. Here again Wicks comes into prominence, ostensibly as the friend of Kitts, and, after a pretended investigation, informs the latter that he has discovered that Harris has taken all the lots from Edith L. Johnston, that he had put a mortgage of $1,800 on the same, that he was going to erect a soap factory thereon, that there were no restrictions in the deed, and that the best thing he (Kitts) could do would be to buy Harris out; and after some preliminary negotiations Kitts did buy back his

property, paying therefor $800 in cash and assuming the mortgage of $1,800, whereupon Harris and his men retired from the field, and the $800, which is the money referred to in the indictment, was taken by Harris and delivered to the defendant. Harris testified that he was employed by Wheeler to perform his part of the transaction, that he received for his services the sum of $25 and his expenses, and that, as matter of fact, there was no intention upon the part of any one to carry into execution the threatened erection of a soap factory upon the premises. At the time Harris made the representations which it is claimed induced Kitts to retake the title to the Hague street property upon the terms and conditions hereinbefore mentioned, it is contended that he did not own the premises, but that the title was in Mrs. Johnston, who was at that time out of the state. It seems, however, that Mrs. Johnston had left with the defendant some blank deeds with her signature attached, and that upon the morning of the day when the larceny is alleged to have been committed one of these blanks was filled out, in which Harris' name was inserted as grantee, and at the same time a mortgage from Harris to Mrs. Johnston was also drawn up, which was executed by Harris after being assured by the defendant that it would make him no trouble; and these instruments were recorded in the clerk's office of Monroe county shortly after 9 o'clock on the morning of November 10th. Another deed from Harris to Kitts was also drawn up after Wheeler had been informed that the scheme had progressed to a point where Kitts had expressed a willingness to pay the $800, and this deed was taken by Harris and delivered to Kitts at the time the money was actually paid.

The foregoing résumé of the essential features of the case, compiled as it is from over 1,000 pages of the printed record, is necessarily somewhat fragmentary; but it is sufficient, we think, to justify the conclusion that, if the facts stated are true, they furnished the jury with ample reason for rendering a verdict which in effect found the defendant guilty of the crime charged in the indictment, provided it was established to their satisfaction that the representations made by Harris to Kitts were false in respect of Harris' ownership of the Hague street property. And thus we come to what the trial court obviously regarded as the crucial question in the case, and the one which gives rise to the claim of counsel which we are about to consider. The evidence in the case leaves it by no means certain when Harris became possessed of the title to this property, if ever. We have seen that a deed was made out which purported to run from Edith L. Johnston to him, and which was left at the clerk's office for record early in the morning of November 10th; that this deed was drawn upon a form which had been signed by Mrs. Johnston in blank; that it purported to have been acknowledged by her before Charles O. Peckens on the 7th day of November, at which time Mrs. Johnston was in the state of Massachusetts; and that the deed was not in fact delivered to Harris before he made the alleged false representations, and obtained from Kitts an agreement to purchase. It was claimed that Peckens held a power of attorney from Mrs. Johnston which not only authorized

him to fill out the deed signed by her, but also to execute and deliver the same. This power of attorney was not produced upon the trial, but it was nevertheless left to the jury to say whether the deed to Harris was executed in pursuance thereof, and, if so, whether it was deposited at the clerk's office with the intention that it should be regarded as thereby irrevocably delivered to Harris, the grantee named therein; and the jury were instructed over and over again by the learned trial judge that, if they should find that the deed was legally executed and delivered on the morning of November 10th, they must acquit the defendant, inasmuch as in that event there was no evidence of false and fraudulent representations of ownership, and consequently no proof of the one essential element of the crime charged. In this connection it may be well to note that Harris had no knowledge of the execution of the deed from Mrs. Johnston to him, or that the same had been left for record at the clerk's office, until after he had induced Kitts to repurchase the Hague street property. On the contrary, he sought the interview with Kitts, and made the assertion of ownership and of his intention to erect a soap factory, without any idea that either was true, and in reliance upon the assurance of the defendant that he would put the title in his (Harris') name if he made the deal work. Indeed, it may be fairly assumed from the evidence before us that Harris did not at any time regard himself as the owner of the premises, for he testified: "I never owned them [meaning the Hague street lots], or pretended to own them, only to old man Kitts." And there is some evidence tending quite strongly to show that, notwithstanding all that had been done towards perfecting the title, it was not the intention of Wheeler that such title should actually vest in Harris unless the deal between him and Kitts was fuly consummated; and this presented one of the questions of fact with which the jury had to deal.

The learned trial judge, after instructing the jury respecting the various matters submitted to their consideration, in a charge which was exceptionally clear and intelligible, summarized the entire case in the following language, viz.:

"Let me recapitulate the propositions of law affecting Harris' title: He got no title if the deed to him was not delivered, and that is true whether a power of attorney was in existence or not; no matter how much authority or how little authority Mrs. Johnston conferred upon Peckens or Wheeler; no matter whether the transfer to Harris was within the scope of authority which she had given them or not, whether that authority was evidenced by writing or only given by word of mouth. If there was no delivery of that deed to Harris, he got no title. If there was a delivery of that deed, he got no title if no written power of attorney was in existence, and if the deed was filled out and used for a purpose not authorized by her; but if a power of attorney actually existed, broad enough in its terms to permit Peckens to convey on her behalf property that thereafter might be put in her name, and if, in addition thereto, that deed from Mrs. Johnston to Harris was in fact delivered, if it was a final and unconditional and irrevocable delivery, then you must acquit the defendant, because he became, under that, the owner of the lots, and had a title which he could convey. * * * If you find that he did not get any ownership and that he was not the owner of these lots until the instant that Kitts passed the money and got his deed; that the pretense that he had a right to erect a soap factory or to sell the lots, just as

he chose, was a false statement,—then it becomes necessary for you to determine whether that can be laid at the door of Wesley Wheeler."

Subsequently, and at the conclusion of the principal charge, the court was requested by the defendant's counsel to instruct the jury "that, if at the time Harris received the eight hundred dollars mentioned in the indictment, Harris' representation that he was the owner was made good by what your honor characterizes as the instantaneous perfection of the delivery of the deed at that time, the defendant cannot be convicted." This request was refused, to which ruling an exception was taken, and this exception fairly raises the point relied upon by the learned counsel. The theory upon which this feature of the case is pressed upon our notice is that, however false the representations of ownership by Harris may have been at the time they were made, if they became in fact true before Kitts parted with his $800 they could not be made the basis of a conviction under the indictment. It is doubtless true (and the jury were virtually so instructed) that if Kitts had been negotiating for the purchase of the Hague street property merely for the purpose of acquiring the title thereto as an investment, or because he desired it for some particular purpose, a false statement as to ownership would have worked no prejudice to him, provided such statement was made good before the title actually passed. But it is hardly necessary to suggest that such is not the case here. Mr. Kitts was not seeking to retake the title to the lots in question because he desired them, but, rather, because he regarded Harris' ownership, and his consequent right to erect on the premises such obnoxious structures as he might see fit, as a menace to his peace and comfort, and in this view the truth of the declarations made as to ownership was a matter of the utmost importance to him. Had he known that Harris' assertion of ownership was false, that he really had no right to erect a soap factory on the premises, and that his apparent right to do so had not been conferred by the real owner, he might have refused to purchase or to negotiate further therefor. But, however this may be, the fact remains that the representation which probably operated more strongly than any other to induce Kitts to part with his money was false, if Harris was not actually clothed with the attributes of ownership; and it will hardly do to say that, because it was made true at the very moment when the agreement was consummated, its viciousness and injurious effect were cured. In our opinion, it would be a gross perversion of justice to hold that a person who had induced another to expend large sums of money in payment for property which he did not want, but which he had purchased in reliance upon the false representations of the seller that he was the owner thereof, and as such intended putting it to a use which would prove hurtful and annoying to the purchaser, should be permitted to escape all responsibility for his fraud by subsequently acquiring title to the property sold. In support of such a proposition the learned counsel cites with especial emphasis the cases of In re Snyder, 17 Kan. 542, and Scott v. People, 62 Barb. 62. The former case, as we understand it, furnishes an apt illustration of the very distinction which we have endeavored

to make plain in this case. . There a party was negotiating for the purchase of some cattle (property which he desired to purchase), and in reliance upon the assurance of Snyder that "he had bought the pick of a large lot of cattle, about one hundred head," the purchase was consummated; and it turned out that when Snyder made the representation which induced the purchase it was false, but before the consideration was actually paid it had become true; and in these circumstances it was held that the pretense, although false when made, was not within the statute. In the second case cited the rule was declared to be "perfectly well settled that the pretense alleged to be false must have formed some part of the inducement to the doing of the act, and must be of some existing fact, and made for the purpose of inducing the prosecutor to part with his property to do the act." Assuming for the moment that Harris did not own the title to the Hague street property until his agreement with Kitts was about being consummated, this case, as submitted to the jury, falls within both the spirit and the letter of the rule thus declared; for Harris' assertion of ownership was the statement of an existing fact, upon which Kitts testified that he relied in making the purchase, and there is no room for doubt that such statement was made for the express purpose of inducing Kitts to part with his money. Indeed, when tested by this rule, there seems to be no occasion for further argument to sustain the proposition that the learned trial court committed no error in refusing to charge in accordance with the request of defendant's counsel.

We have examined the other exceptions set forth and commented upon in the brief of counsel, without discovering any which present prejudicial error, and we have consequently reached the conclusion that the judgment and orders appealed from should be affirmed. The order denying the defendant's motion for leave to inspect the minutes of the grand jury is affirmed, without any special consideration, by reason of the fact that counsel, in his argument and brief, makes no point of the appeal from that order.

Judgment, conviction, and orders affirmed, and case remitted to the county court of Monroe county, pursuant to section 547 of the Code of Criminal Procedure. All concur.